**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | NO. 4:17-cr-514-1 |
| | ) | |
| VS. | ) | Houston, Texas |
| | ) | 10:54 a.m. |
| | ) | |
| LUIS CARLOS DE LEON-PEREZ | ) | July 16, 2018 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**RE-ARRAIGNMENT**

**BEFORE THE HONORABLE KENNETH M. HOYT**

**UNITED STATES DISTRICT JUDGE**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

APPEARANCES:

FOR THE GOVERNMENT:

    Ms. Sarah Edwards
    Fraud Section, Department of Justice
    1400 New York Avenue
    Washington, DC 20005
    Tel:  202-305-6761

    Mr. Robert Searls Johnson
    Mr. John P. Pearson
    U.S. Attorney's Office
    1000 Louisiana Street
    Suite 2300
    Houston, TX 77002
    Tel:  713-567-9000

1  APPEARANCES:   (Continued)

2  FOR THE DEFENDANT:

3       Mr. Herman Frank Rubio
        Law Offices of H. Frank Rubio
4       1107 NE 104th Street
        Miami Shores, FL 33138
5       Tel:  305-892-5297

6       Mr. George J. Vila
        George J. Vila PA
7       201 Alhambra Circle
        Suite 702
8       Coral Gables, FL 33134
        Tel:  305-445-2540

9
   COURT REPORTER:
10
        Ms. Kathleen K. Miller, CSR, RMR, CRR
11      515 Rusk, Room 8004
        Houston, Texas  77002
12      Tel:  713-250-5087

13 Proceedings recorded by mechanical stenography.
   Transcript produced by computer-assisted transcription.
14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

(Defendant present.)

THE COURT:  This is Cause Number 2017-514, the United States of America vs. Luis Carlos De Leon-Perez.  So it is not for me that the bell tolls.

MR. PEARSON:  Ask not, Your Honor.

THE COURT:  Who is representing the United States in this matter?

MR. PEARSON:  John Pearson, Robert Johnson and Sarah Edwards on behalf of the United States.  Good morning, Your Honor.

THE COURT:  Good morning.  And representing the defendant, Luis Carlos DeLeon-Perez.

MR. RUBIO:  Good morning, Your Honor.  Frank Rubio and Mr. George Vila on behalf of Mr. Luis Carlos De Leon-Perez.

THE COURT:  Good morning, sir.

MR. RUBIO:  Good morning, sir.

THE DEFENDANT:  Good morning, Your Honor.

THE COURT:  And what is your name?

THE DEFENDANT:  Luis Carlos DeLeon-Perez.

THE COURT:  It is my understanding -- I'll speak to your lawyers first.  It is my understanding that, there is, first of all, a -- maybe I should speak to the government lawyer first.  There is a superseded

1  indictment -- a superseding indictment or superseding

2  criminal investigation?

3          MS. EDWARDS:  Superseding information, Your

4  Honor.

10:54:54  5          THE COURT:  Information.  And that as a result

6  of that, Mr. De Leon-Perez is going to be entering a plea

7  of guilty, I gather, to the charge in the -- in the

8  superseding criminal information; is that correct?  Is that

9  your understanding?

10:55:12  10         MS. EDWARDS:  Yes, Your Honor.

11         THE COURT:  Having said that, I'll turn to you,

12  counsel, and ask you whether or not you understand that to

13  be the case?

14         MR. RUBIO:  That is correct, Your Honor.

10:55:22  15         THE COURT:  And you will be standing and

16  speaking to the Court, Mr. Rubio?

17         MR. RUBIO:  Yes, Your Honor.

18         THE COURT:  Okay.

19         MR. RUBIO:  Good morning again.  Your Honor,

10:55:30  20  our understanding is that the government, in fact, is

21  filing a superseding information.  We have received a copy

22  of that.  We have reviewed that copy with Mr. De Leon and

23  we are prepared to enter a waiver of indictment --

24         THE COURT:  I have got a copy of that here.

10:55:46  25         MR. RUBIO:  -- which he has executed.  And we

1 are --

2                THE COURT:  Oh, he has already executed a copy

3 or does he need to execute a copy?

4                MS. EDWARDS:  I have one right here.

10:55:54  5                THE COURT:  Why don't we take this one?  Just

6 go ahead and do this one.

7                MR. RUBIO:  All right.

8                THE COURT:  It is not a problem.  We don't need

9 to look for anything.

10:56:01 10                MR. RUBIO:  For the record, Mr. De Leon is

11 signing a waiver of indictment at this moment.  And, Your

12 Honor, on his behalf, I have also signed as his attorney --

13                THE COURT:  Very good.

14                MR. RUBIO:  -- the waiver of indictment that I

10:56:30 15 indicated I previously reviewed with Mr. De Leon.

16                THE COURT:  All right.  Very good.  Let me get

17 you to raise your right hand at this time, Mr. De Leon,

18 please, sir.

19 (Defendant sworn.)

10:56:43 20                THE DEFENDANT:  Yes, I do.  I swear.

21                THE CASE MANAGER:  Thank you.

22                THE COURT:  All right.  I have got a document

23 here, Mr. De Leon, with what appears to be your signature.

24 Can you verify that that is, in fact, your signature you

10:56:57 25 placed --

1            THE DEFENDANT:  Yes, I placed my signature,
2  Your Honor.
3            THE COURT:  Very good.  Then the Court will
4  execute the document.
10:57:02  5            MR. RUBIO:  And I will represent for the record
6  that not only did I review it with him, I explained it to
7  him, the difference between an indictment and an
8  information --
9            THE COURT:  Right.
10:57:14  10            MR. RUBIO:  -- and what is occurring before the
11  Court.
12            THE COURT:  Okay.  That you did or did not?
13            MR. RUBIO:  That I did.
14            THE COURT:  You have done that?
10:57:22  15            We are at a juncture, Mr. DeLeon-Perez,
16  where you would normally go before the magistrate judge,
17  and in this instance, she would explain to you or state to
18  you what the charges are under the criminal information,
19  and she would take your plea, and your plea would have
10:57:47  20  probably been "not guilty" there.
21            And you would then come up here, and you
22  would then tell me you're pleading guilty to the criminal
23  information.
24            THE DEFENDANT:  Yes.
10:57:58  25            THE COURT:  Is that what you understood the

1 process was about to be this morning, as I understand it?

2 I might be confused, but I'm trying to make sure that you

3 are not.

4                THE DEFENDANT:  No, it -- that is the process.

10:58:07    5                THE COURT:  All right.  And for the benefit of

6 the record, your counsel has indicated that you have talked

7 with him, consulted with him, concerning the criminal

8 information as opposed to an indictment.  You recall him

9 telling you that to enter a plea of guilty, and to be

10:58:27   10 apprised of what the charges are in the criminal

11 information means that you are not being -- these charges

12 are not being presented to a Grand Jury?

13                THE DEFENDANT:  He explained it to me.

14                THE COURT:  And therefore by not presenting it

10:58:39   15 to a Grand Jury, you are missing or waiving the opportunity

16 to have a Grand Jury look at the information and say, no

17 crime, this charge cannot go forward.  You are waiving that

18 right.  Understood?

19                THE DEFENDANT:  Yes, it is understood.  My

10:58:55   20 lawyers discussed that to me.  They explained it to me.  I

21 understand.

22                THE COURT:  And you are prepared, I gather,

23 having gone through that with him, to go forward with a

24 waiver of the criminal information -- a waiver of the

10:59:08   25 indictment, and enter a plea to the criminal information?

1          THE DEFENDANT:  That's right, sir.

2          THE COURT:  And do you understand what the

3 charge is that you are -- what the charges are, or the

4 charge -- let me just pull it forward here -- under the

10:59:24   5 superseding information that has been filed and for which

6 you will be entering a plea?  What are -- what is it there

7 that you are entering a plea to?

8          THE DEFENDANT:  It's for two charges.  The FCPA

9 one and the money laundering conspiracy.

10:59:41  10          THE COURT:  All right.  I am showing here Count

11 1 being conspiracy to violate the --

12          THE DEFENDANT:  Foreign --

13          THE COURT:  Yes, the Foreign Corruption

14 Practices Act.  That's what you understand Count 1 to be?

10:59:52  15          THE DEFENDANT:  Yes.

16          THE COURT:  And you understand Count 2 to be

17 conspiracy to commit money laundering, which is also a

18 violation of federal law?

19          THE DEFENDANT:  Uh-huh.

11:00:00  20          THE COURT:  Those are the two that you are

21 entering -- that are the subject of the superseding

22 information for which you're entering pleas of guilty?

23          THE DEFENDANT:  That's correct.

24          THE COURT:  And, of course, the indictment

11:00:09  25 charges something in excess of that, doesn't it, a number

1 of other charges?  It's a multiple count indictment, wasn't

2 it?

3        THE DEFENDANT:  The first, yes.

4        THE COURT:  Yes.  The indictment itself.

11:00:18   5        THE DEFENDANT:  Yes.

6        THE COURT:  So in lieu of entering pleas of

7 guilty or going to trial on the indictment, you're entering

8 pleas of guilty to two counts of a superseding information.

9        THE DEFENDANT:  And we are modifying the

11:00:29 10 conspiracy charge that we had before to the new one.

11        THE COURT:  And that's what you want to do?

12        THE DEFENDANT:  Yes.

13        THE COURT:  No one forced or threatened you in

14 any way to cause you to engage in this and to enter these

11:00:38 15 pleas?

16        THE DEFENDANT:  No, nobody did it.  It is my

17 decision.  I talked a lot about that with my lawyers.  We

18 had a lot of meetings.  We worked on the discovery, a lot

19 of stuff.  Well, we presented on you like a month before in

11:00:51 20 some motions.  We have been, and after all that time I

21 decide to go with this way.

22        THE COURT:  Sounds like you have answered about

23 six or eight of the questions I was about to ask.

24        THE DEFENDANT:  I'm sorry.

11:01:01 25        THE COURT:  So you -- no, no, no.  No problem.

1  No problem.  I think it is important that you be as

2  transparent as you can be with me about the process, and

3  that helps me to appreciate and the record to be cleared --

4  to be clear regarding your understanding of what this is

11:01:17  5  all about and what you are doing this morning.

6                    So, let me ask a few questions.  How old

7  are you?

8                    THE DEFENDANT:  I am 43 years old.

9                    THE COURT:  Let me also ask if counsel and you

11:01:33  10  will waive my reading the criminal information into the

11  record, and you would adopt the -- when I say adopt, I mean

12  you will accept the information that is on file as having

13  been read to you and understood by you, and you are waiving

14  your right to plead not guilty?

11:01:52  15                    MR. RUBIO:  Yes, Your Honor.  And I had

16  explained that I thought when we were down before the

17  magistrate that we would enter a not guilty plea; however,

18  we are prepared and we do -- we have received a copy of the

19  information.  We waive formal reading of the information,

11:02:07  20  and although we would have entered a not-guilty plea

21  downstairs, we're prepared to enter a plea to -- of guilty

22  to both counts that have been filed in the superseding

23  information before the Court.

24                    THE COURT:  Mr. DeLeon-Perez, you're on the

11:02:22  25  same page?  Is that your answer as well?

1          THE DEFENDANT:  Yes, it is.

2          THE COURT:  Very good.  Then having said that,

3 and having that understanding, let me ask how old are you,

4 sir?

11:02:31    5          THE DEFENDANT:  43 years old, sir.

6          THE COURT:  How far did you go in school?

7          THE DEFENDANT:  I did --

8 (Confers in Spanish with attorney.)

9          THE DEFENDANT:  I got my bachelor in law, and

11:02:43   10 also after that I did some study, some extra study,

11 diplomat in Spanish.

12          MR. RUBIO:  Equivalent to a masters, what would

13 be a masters in law, I believe, in our country.

14          THE COURT:  I think I heard you say a bachelors

11:02:57   15 in law, and you have got additional studies --

16          THE DEFENDANT:  Yeah.

17          THE COURT:  -- will be equivalent to a masters

18 in law?  Were you practicing, or teaching, or what?

19          THE DEFENDANT:  I did practice law.

11:03:07   20          THE COURT:  Okay.  And you practiced law where?

21 Where did you practice law?

22          THE DEFENDANT:  In Venezuela.

23          THE COURT:  Have you ever been treated for drug

24 addiction or alcohol dependency?

11:03:24   25          THE DEFENDANT:  No, sir.

1          THE COURT:  Have you been treated for mental
2    illness?
3          THE DEFENDANT:  No, sir.
4          THE COURT:  Are you taking medication today?
11:03:29  5          THE DEFENDANT:  No, sir.
6          THE COURT:  You are represented by a couple of
7    attorneys, one of which stands next to you there.
8          THE DEFENDANT:  Correct.
9          THE COURT:  Are you satisfied with the
11:03:40 10   representation that he is providing for you in this case?
11         THE DEFENDANT:  Yes.
12         THE COURT:  Do you have any complaints or
13   concerns about anything he's done --
14         THE DEFENDANT:  No, sir.
11:03:47 15        THE COURT:  -- or is doing that you need to
16   bring to my attention?
17            You can complain to him, but I want to
18   make sure if there is something I need to know, you tell
19   me.  You understand?
11:03:55 20        THE DEFENDANT:  No, sir.  No, sir.
21         THE COURT:  Okay.  Very good.
22         THE DEFENDANT:  They are doing a very good job.
23         THE COURT:  Very good.  Counsel, you have had
24   sufficient opportunity, as you have already voiced here, to
11:04:05 25   discuss this case fairly thoroughly, and maybe fairly is

1  not descriptive, but thoroughly with your client over the

2  time, and so I need to make sure that for the record you

3  are satisfied that you had that sufficient time, and you're

4  presenting your client here for a plea, that you believe

11:04:24  5  that to be an appropriate thing to do at this time.

6  MR. RUBIO:  Yes, Your Honor.  Both myself and

7  Mr. Vila have represented Mr. De Leon since he was

8  incarcerated in Madrid, Spain, and went through extradition

9  proceedings that they eventually waived to get back here to

11:04:44  10  resolve his problems.  We have reviewed over -- over a

11  million and a half documents.  We have actually -- we're

12  attorneys in Florida.  We have traveled almost on a weekly

13  basis to confer with Mr. De Leon since the inception.  We

14  have reviewed the discovery.  We have prepared motions,

11:05:05  15  some that were filed, some that were not filed because the

16  case was resolved.

17  We have conferred with Mr. De Leon.  We

18  have reviewed the sentencing guidelines with him, and we

19  are satisfied that he understands our procedures, that he's

11:05:25  20  reviewed the discovery, and that he is intelligently --

21  knowingly and intelligently entering this plea.

22  THE COURT:  And by saying "knowingly and

23  intelligently," you are also saying to the Court that as

24  far as you're concerned, he is mentally competent to enter

11:05:38  25  a plea or pleas of guilty to two counts, are you not?

1     THE DEFENDANT:  That is correct, Your Honor.

2     THE COURT:  Very good.  All right.

3         Before I take your plea or pleas, Mr. De

4 Leon-Perez, I need to make sure of several things.  First

11:06:03  5 of all, that you understand the elements of the crime.  I

6 take it that you are not a citizen of the United States.

7     THE DEFENDANT:  I am a citizen.

8     THE COURT:  You are not?

9     THE DEFENDANT:  I am.

11:06:10  10     THE COURT:  You are a citizen of the United

11 States?

12     THE DEFENDANT:  Yes.  I was born in

13 Mississippi.

14     THE COURT:  Okay.  Very good.  You still get

11:06:16  15 the rights under the Federal Constitution, Fourth, Fifth

16 and Sixth Amendments, in spite of the fact that you're a

17 citizen; and I say that kind of somewhat facetiously

18 because I generally -- I apologize for assuming that all of

19 your practice and seemed like part of your life has been

11:06:32  20 spent in Venezuela, or South America, and there and back

21 and forth.

22     THE DEFENDANT:  In Spain.

23     THE COURT:  Spain, where ever.  The point is

24 that the Federal Constitution provides certain guarantees

11:06:46  25 that you are fully aware, perhaps, in your practice are

available to you.  They are under the Fourth, Fifth and
Sixth Amendments to our Constitution, so I need to state
those for the record, and have your acknowledgment.  First,
under the Fourth Amendment there are certain rights that

11:07:00  you have to, for example, speedy trial, and to require that
the government not transgress your Fourth Amendment right
to be free from unreasonable searches or seizures, not
bring unwarranted lawsuits of criminal conduct against you,
not treat you like a criminal before you're arrested and

11:07:18  been found to be one, by law enforcement.

All of those are rights under the Federal
Constitution that you are guaranteed.  Do you understand
that to enter a plea of guilty means you're waiving your
rights under the Fourth Amendment?

11:07:30  THE DEFENDANT:  I understand you, Your Honor.

THE COURT:  The Fifth Amendment is your right
to remain silent, and not give testimony against yourself.
You will be testifying against yourself when you enter this
plea of guilty.  Understood?

11:07:42  THE DEFENDANT:  Understood.

THE COURT:  The Sixth Amendment is your right
to trial by jury, and that is obviously have jurors,
citizens of the United States, determine whether or not the
government has proved its case beyond a reasonable doubt;

11:07:54  and failing, the charges would be dismissed.

1          When you enter a plea, you're waiving

2  that.  Understood?

3          THE DEFENDANT:  It is understood, Your Honor.

4          THE COURT:  Is it your desire, then, to waive

11:08:04  5  your rights under the Fourth, Fifth and Sixth Amendments,

6  and enter pleas of guilty to Counts 1 and 2 of the criminal

7  information?

8          THE DEFENDANT:  Yes, I decided, Your Honor.

9          THE COURT:  Here is what the government needs

11:08:17  10  to prove under Count 1:  First, that you are -- that as a

11  defendant, at least yourself and one other person made an

12  agreement to violate the FCPA, as charged in the

13  information; that you knew of the unlawful purpose of the

14  agreement, but joined it willfully, that is no one forced

11:08:34  15  or threatened you in any way.  You did this of your own

16  free will, with the intent to further the unlawful purpose.

17  And finally that one of the conspirators, either yourself

18  or one other person, during the existence of the

19  conspiracy, knowingly committed at least one of the overt

11:08:49  20  acts described in the indictment, or in the criminal

21  information, or both, in order to accomplish some object or

22  purpose of the conspiracy.  That's what the government

23  needs to prove.

24          The penalty associated with this offense

11:09:03  25  is a term of confinement.  A statutory maximum penalty for

a violation of Count 1 is five years imprisonment, and a

fine -- and/or a fine not to exceed $250,000, or twice the

pecuniary gain or loss, followed by a three-year -- or up

to three-year term of supervised release and a $100 special

assessment.  Have you heard that before?

THE DEFENDANT:  Yes.

THE COURT:  And you understand that's the

penalty associated with this offense?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Count 2 charges conspiracy to

commit money laundering, a violation of Title 18, Section

1956(h), and here are the elements.

First, that you and at least one other

person made an agreement to commit money laundering as

charged in the information; that you knew the unlawful

purpose of the agreement, yet you joined it willfully, that

is with the intent to further the unlawful purpose.

That's -- those are the elements of the --

of conspiracy to commit money laundering.  As a note and

aside, the government has informed me that a conviction for

conspiracy to commit money laundering under Title 18,

Section 1956(h), does not require proof of an overt act in

furtherance of the conspiracy as determined by the Fifth

Circuit.

So you understand that to be, apparently,

1  something that's in place, and not -- and you will not be

2  pushing forward in that regard?  Do you understand that?

3              THE DEFENDANT:  Yes, I understand that, sir.

4              THE COURT:  The statutory penalty, or maximum

11:10:40   5  penalty, should I say, for a violation of Title 18, Section

6  1956(h) is imprisonment of not more than ten years and/or a

7  fine not to exceed $250,000, or twice the amount of the

8  criminally derived property involved in the transaction,

9  whichever is greatest.  Following that is a special

11:11:02  10  assessment in the amount of $100, and certainly a term of

11  supervised release would be accompanying that charge,

12  perhaps, as well, or one that might run even concurrent

13  with -- or concurrently with a term of supervised release

14  for conspiracy to violate the FCPA.

11:11:25  15              Those are the elements of the offense, the

16  penalties associated.  You have indicated that you know --

17  that you understand the elements.  You have heard and

18  understand the penalties associated with this, these two

19  criminal offenses.  I am going to ask if the assistant U.S.

11:11:45  20  attorney -- is it U.S. attorney or Department of Justice?

21  Which is it?

22              MS. EDWARDS:  Trial attorney, Your Honor, but

23  I'll answer to whatever you call me.

24              THE COURT:  All right.  I'll call you assistant

11:11:55  25  U.S. attorney then.  Would you, then, state for the record

1   the factual basis underlying the criminal information,

2   specifically the two counts that -- that the defendant is

3   entering a plea to, or pleas to?  And, of course, I suspect

4   that that is incorporated as a part at least in some

11:12:14   5   respect in the plea agreement.

6           MS. EDWARDS:  Yes, Your Honor.

7           THE COURT:  So if you would listen carefully,

8   Mr. De Leon-Perez, I might have a question or two for you.

9   Proceed, counsel.

11:12:24   10          MS. EDWARDS:  Your Honor, prior to 2011,

11  defendant, who was an attorney, worked for Electricidad de

12  Caracas, a public utility that supplied electricity to the

13  city of Caracas.  Through this position he met or worked

14  alongside co-conspirators Nervis Gerardo Villalobos

11:12:42   15  Cardenas, Mr. Villalobos, and an individual identified in

16  the superseding information as Official A.  During this

17  time period, through his professional activities, defendant

18  also met Abraham Jose Shiera Bastidas, Mr. Shiera, and

19  Roberto Enrique Rincon Fernandez, Roberto Rincon.

11:13:01   20              Between 2011 and 2013, Official A,

21  Alejandro Isturiz Chiesa, Mr. Isturiz, and Cesar David

22  Rincon Godoy, Mr. Rincon, held senior management positions

23  at Bariven S.A.  Bariven is the procurement subsidiary of

24  Petroleos de Venezuela, S.A., or PDVSA.  PDVSA is the

11:13:23   25  Venezuelan state-owned and state-controlled oil company.

1          PDVSA, together with its subsidiaries and

2    affiliates, was responsible for the exploration,

3    production, refining, transportation and trade in energy

4    resources in Venezuela and provided funding for other

11:13:38    5    operations of the Venezuelan government.  In these

6    positions the individuals I just mentioned had the

7    responsibility for assembling and revising Bariven's weekly

8    payment proposals, which set forth the debt that Bariven

9    owed to its numerous vendors, and proposed payments of

11:13:53   10    various amounts to selected vendors and authorizing

11    payments on these proposals.

12          From in or about 2011 through in or about

13    2013, the defendant conspired with Mr. Villalobos, Isturiz,

14    Rincon, Official A and others to solicit PDVSA vendors

11:14:12   15    Roberto Rincon and Shiera for bribes and kickbacks in

16    exchange for providing assistance to Roberto Rincon and

17    Shiera in connection with their PDVSA business.  Roberto

18    Rincon, a resident of the Southern District of Texas, was

19    the owner of a number of U.S.-based energy companies,

11:14:29   20    including several companies based in the Southern District

21    of Texas, which supplied equipment and services to PDVSA.

22    Shiera also owned a number of U.S.-based energy companies

23    that supplied equipment and services to PDVSA.  Roberto

24    Rincon and Shiera worked together on a number of Shiera

11:14:46   25    contracts and contract bids.

1          Specifically, the group of then-current

2 and former high-level officials identified in the

3 superseding information as the management team, agreed to

4 give Roberto Rincon's and Shiera's companies payment

11:14:58   5 priority over other PDVSA vendors, ensuring that Roberto

6 Rincon's and Shiera's companies, including their U.S. based

7 companies, would get at least weekly payments on

8 outstanding PDVSA invoices, and to provide Roberto Rincon's

9 and Shiera's companies with assistance in winning future

11:15:17  10 PDVSA business.  In exchange for this assistance, Roberto

11 Rincon and Shiera paid bribes, including by using wire

12 transfers from, to or through financial institutions in the

13 United States, in the amount of 10 percent of all payments

14 that Roberto Rincon and Shiera received from PDVSA to an

11:15:32  15 account in Switzerland for the benefit of the management

16 team, including the defendant, Mr. Villalobos and Official

17 A.  The defendant understood that at least a portion of the

18 bribe payments being paid by Roberto Rincon and Shiera were

19 also for the benefit of then senior Venezuelan government

11:15:49  20 official identified as Official B in the superseding

21 information.

22          The defendant helped form and execute the

23 scheme.  On or about early 2011, the defendant met with

24 Roberto Rincon and Shiera at the defendant's Miami-area

11:16:03  25 apartment and explained to Roberto Rincon and Shiera the 10

1  percent kickback that they would have to pay in order to

2  receive payment priority and additional purchase orders

3  from PDVSA.  Soon after, the defendant, convened a meeting

4  at his Caracas apartment attended by Shiera, Roberto

11:16:20  5  Rincon, Villalobos, Isturiz and others.  At this meeting,

6  the group discussed the management team structure,

7  payments, wires, purchase orders, and collections.

8  Defendant and his co-conspirators also

9  helped establish shell companies and foreign bank accounts

11:16:35  10  for the management team, including accounts in Switzerland.

11  In particular, the defendant served as one of two

12  beneficial owners of a bank account identified as Swiss

13  Account 1 in the superseding information that was opened in

14  Switzerland in or about September 2011 in the name of a

11:16:51  15  Scottish partnership with no legitimate business

16  activities, that the co-conspirators used in furtherance of

17  the bribery and money laundering scheme.

18  Defendant also exercised signature

19  authority over Swiss Account 1, which served as a "funnel"

11:17:05  20  account; Roberto Rincon and Shiera paid bribes either

21  directly to Swiss Account 1, or to other shell companies,

22  which then transferred the money to Swiss Account 1.

23  Defendant and others then diverted the money from Swiss

24  Account 1 into three other accounts which were for the

11:17:20  25  benefit of the defendant and his co-conspirators, and were

1 also held in the name of shell companies.

2                    For example, in a letter dated April 19th,

3 2012, defendant instructed a partner in a Swiss wealth

4 management firm who also helped establish the management

5 team's accounts, and is identified as Swiss Banker 1 in the

6 superseding information, to transfer all commissions

7 earmarked for Swiss Account 1 into three additional

8 accounts according to the following split:  30 percent to

9 an account for the benefit of Mr. Villalobos and identified

10 in the superseding information as Swiss Account 2; 30

11 percent to an account for the benefit of the defendant and

12 identified in the superseding information as Swiss Account

13 3; and 40 percent to an account for the benefit of Official

14 A and identified in the superseding information as Swiss

15 Account 4.

16                    The defendant also directed specific wire

17 transfers.  For example, on January 23rd, 2012, defendant

18 directed a wire transfer from Swiss Account 1 to Swiss

19 Account 3 in the amount of $2,940,000.  In addition, on

20 February 16th, 2012, defendant authorized two wire

21 transfers from Swiss Account 1, one to Swiss Account 3 in

22 the amount of $4,000,000, and another to Swiss Account 4,

23 in the amount of $1,400,000.

24                    Defendant also communicated with his

25 co-conspirators about the status of the bribe payments due

to the management team.  On February 15th, 2012, Shiera
sent a Blackberry message to the defendant that said, as
translated into English:  Note from my manager:  Last week
the payment for $322,021 was completed in two parts.  One
is for $121,400, and the other is for $200,621.  On the
other hand, this week, we are paying $1,758,223,
corresponding to $1,000,000 for the plane and $788,255 from
the last collection received.  The defendant replied,
"Okay.  We have to see them anyhow."

                    Defendant also worked to ensure that
Roberto Rincon and Shiera received payment priority from
PDVSA.  For example, Shiera sent the defendant a Blackberry
message on November 30th, 2012 referencing an upcoming
meeting of the management team and an outstanding invoice
that said, as translated into English, "Hey, brother, how
are you?  Meeting confirmed for December 7th.  We will
bring you up, brother.  I have 20 million approved to
collect for this week.  I'd appreciate your help with at
least one invoice for 15 million."  Defendant replied,
"I'll help you with the payment, the thing about the 7th
I'll talk to Enano [Mr. Villalobos] and square it..."

                    In total, during the course of these
conspiracies, defendant and his co-conspirators laundered
approximately $29,429,557.90 in bribe proceeds through
various financial transactions, including wire transfers

to, from, or through bank accounts in the United States.
Defendant personally obtained at least $16,125,302.06 and
controlled $18,118,783.15 in laundered funds from Roberto
Rincon and Shiera as a result of his role in the
conspiracy.

In addition, the defendant also solicited
and received bribes from other owners of energy companies
based in the United States and elsewhere in exchange for
his assistance in helping those individuals and their
companies win business with PDVSA and obtain payment from
PDVSA on outstanding invoices ahead of other PDVSA vendors.
Specifically, the defendant received at least $479,547.62
in bribes from a U.S. citizen and resident of the Southern
District of Texas who owned and controlled businesses based
in the Southern District of Texas that did business with
PDVSA.  The defendant received an unknown amount in bribes
from another resident of the Southern District of Texas,
who owned and controlled businesses based in the Southern
District of Texas that did business with PDVSA; and an
unknown amount of bribes from a resident in Florida who
owned and controlled businesses based in the United States
that did business with PDVSA.

THE COURT:  All right.  Did you hear that,
Mr. De Leon?

THE DEFENDANT:  Yes, I heard.

THE COURT:  Are those facts true?

THE DEFENDANT:  Yes, they are.

THE COURT:  All right.  Counsel, do you know of any reason why your client should not enter a plea of guilty to the Count 1, conspiracy to violate the FCPA?

MR. RUBIO:  No, Your Honor.

THE COURT:  Do you know of any reason why he should not plead guilty to conspiracy to commit money laundering, a violation of Title 18, Section 1956(h)?

MR. RUBIO:  No, Your Honor.

THE COURT:  I ask you, then, to the charge of conspiracy to violate the FCPA, a violation of Title 18, Section 371, how do you plead to that charge, guilty or not guilty?

THE DEFENDANT:  Guilty.

THE COURT:  To the charge of conspiracy to commit money laundering, violation of Title 18, Section 1956(h), how do you plead to that charge, guilty or not guilty?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  You have entered into a plea agreement with the government, I believe, in this matter. I am going to ask if that would be summarized.  And, of course, that should be a written document that you all have, or will be executing.  So listen carefully again.

1          MS. EDWARDS:  Your Honor, the terms of the plea

2    agreement are that the defendant agrees to plead guilty to

3    Counts 1 and 2 of the superseding information which, as you

4    have discussed with the defendant, are conspiring to

11:23:14  5    violate the Foreign Corrupt Practices Act in violation of

6    Title 18, United States Code, Section 371; and conspiring

7    to commit money laundering in violation of Title 18, United

8    States Code, Section 1956(h) and Section 1957.

9          The United States agrees at sentencing not

11:23:33  10   to oppose the defendant's anticipated request for a

11   three-level downward departure pursuant to the United

12   States Sentencing Guidelines, Section 3E1.1, should the

13   defendant accept responsibility as contemplated by the

14   sentencing guidelines.

11:23:47  15         The parties -- excuse me.

16   (Counsel confer off the record.)

17         MS. EDWARDS:  I am going to summarize the terms

18   of the agreement.

19         MR. VILA:  Judge, may we have a sidebar,

11:24:00  20   please, just concerning a matter with the -- with the plea

21   agreement?

22         THE COURT:  Sure.  Does your client need to

23   step back?

24         MR. PEARSON:  Your Honor, we just need one

11:24:13  25   minute.  We can work this out.

THE COURT: Oh, okay. Well, you can stand and you-all will step back. Okay. That's fine.

(Counsel confer off the record.)

THE COURT: All right. Where are we?

MS. EDWARDS: I believe, I had just let Your Honor know that we weren't going to oppose the defendant's request for a three-level departure downward --

THE COURT: Sure.

MS. EDWARDS: -- should he accept responsibility. The plea agreement includes the standard appellate waiver and the defendant also agrees to forfeit between $16,125,302, and $18,118,783 by money judgment. The United States will administratively forfeit an additional $479,547.62.

THE COURT: And, of course, you don't waive your right to seek or ask for whatever you think is the appropriate punishment at the time of sentencing, correct?

MS. EDWARDS: Correct.

THE COURT: Okay. Does that sound like it's the terms and conditions of the plea agreement as you understand them, Mr. De Leon-Perez?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Anyone promise you any other concessions or agreements beyond those that are in the written document, or what you heard here in court?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Specifically, no one has promised

3 you they are going to pardon you or give you any special

4 treatment after this matter is over with, correct?

11:25:55   5          THE DEFENDANT:  No.  No, sir.

6          THE COURT:  In other words you are not relying

7 upon it even if it did, right?

8          THE DEFENDANT:  No, Your Honor.

9          THE COURT:  Okay.  As a basis for entering the

11:26:02  10 pleas, is what I mean.

11          THE DEFENDANT:  (Nodding.)

12          THE COURT:  So let me tell you -- let me ask

13 you, then, if you would take a look.  Do you have the

14 written document there?

11:26:13  15          MS. EDWARDS:  Yes, Your Honor.

16          THE COURT:  Would you all take a look at that.

17 And, Mr. De Leon-Perez, if you would verify that that is

18 the document that you discussed with your attorneys, that

19 you intend to sign off on it, and then go ahead and sign

11:26:25  20 off on it if you have not already, and when you all are

21 done with that, if -- Mr. Rubio, if you would pass it up to

22 the clerk of the Court.

23          MR. RUBIO:  Yes, Your Honor.

24               Your Honor, for the record, the defendant

11:26:46  25 is signing the plea agreement at this time before the

1 Court.

2　　　　　THE COURT:  Thank you very much.

3　　　　　THE DEFENDANT:  Not my best sign.

4 (Plea agreement executed by defendant.)

11:27:55　5　　　　　THE COURT:  All right.  Mr. Rubio, if you would

6 pass those to the clerk of court, we will take your

7 client's affirmation on those documents, or on his

8 signature on the document as the next item.

9　　　　　THE CASE MANAGER:  Yes, Your Honor.

11:28:52　10　　　　　THE COURT:  All right, sir.  If you would raise

11 your right hand and affirm the signature on the document,

12 please, sir.

13　　　　　THE CASE MANAGER:  Have you read or has someone

14 read to you the plea agreement form which you have just

11:29:04　15 signed?

16　　　　　THE DEFENDANT:  Yes, I do.  I have read it.

17　　　　　THE CASE MANAGER:  Are the matters and things

18 contained in the form true and correct, to the best of your

19 knowledge.

11:29:11　20　　　　　THE DEFENDANT:  Yes, they are true and correct

21 at the best of my knowledge.

22　　　　　THE CASE MANAGER:  Have you signed it of your

23 own free will?

24　　　　　THE DEFENDANT:  Yes, I did.

11:29:18　25　　　　　THE CASE MANAGER:  Thank you.

1          THE COURT:  You may lower your hand.  Thank

2  you, sir.

3          Based on your plea of guilty to Count 1

4  and plea of guilty to Count 2 of the superseding criminal

11:29:27    5  information, the Court makes the following findings:

6  First, that you're mentally competent to enter this plea of

7  guilty, that a factual basis exists for the indictment as

8  well as the superseding criminal information that you are

9  now opting to enter pleas of guilty to; that you are

11:29:43   10  entering these pleas of guilty freely and voluntarily,

11  understanding the nature of the charges pending against you

12  and the consequences of entering these pleas of guilty to

13  Counts 1 and 2.

14          Based upon your plea of guilty to Count 1

11:29:57   15  of the superseding information, the Court finds you guilty

16  as charged in the -- in the document that is the plea

17  documents; based on your plea of guilty to Count 2, the

18  Court finds you guilty as charged in the plea documents.

19          The Court is going to set this -- I think

11:30:14   20  I gave you my date back -- sometime in September, probably.

21          THE CASE MANAGER:  Yes, Judge.

22          THE COURT:  The Court is going to set this case

23  for sentencing September 24.  Yes.  September 24 at 10:00

24  a.m.

11:30:27   25          A presentence investigation report will be

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1  prepared by the probation office and, of course, if that

2  date gets moved, then you will be the first to know and, of

3  course --

4           THE DEFENDANT:  Okay.

11:30:39  5           THE COURT:  -- we will then reset it, but that

6  is the date that you will be making an appearance back

7  before the Court.

8                It is my understanding that the parties

9  have entered into an agreement to -- to permit bond for

11:30:54  10  Mr. De Leon-Perez.  Is that correct for the government?

11           MS. EDWARDS:  That is correct, Your Honor.

12           THE COURT:  All right.  Mr. De Leon, I have

13  some questions I need to ask and get your understanding.

14                Is it your understanding that the

11:31:07  15  government has entered into a plea -- not a plea -- entered

16  into an agreement with you on your motion for a bond.  Is

17  that your understanding?

18           THE DEFENDANT:  Yes, I understand that.

19           THE COURT:  Do you understand that the amount

11:31:18  20  that the government has agreed to is a 10 percent cash

21  against a $250,000 bond?

22           THE DEFENDANT:  Yes, I understand that, sir.

23           THE COURT:  Is it your understanding that you

24  will be submitting to electronic monitoring?

11:31:32  25           THE DEFENDANT:  Yes, I understand that, sir.

1          THE COURT:  And do you also understand that you
2     are on home confinement?  And what that means, meaning that
3     you are to be at home except in specific circumstances, one
4     of which is the visitation with your attorneys, if
11:31:47  5     necessary, or them taking you to locations that they need
6     to take you to, all of which needs to be prompt --
7     probation needs to be prompted about.
8               For example, especially if you have to
9     leave the Southern District of Texas in order to accomplish
11:32:02  10    some defensive thing that they would like for you to do, or
11    even if it's the government who is asking you to make this
12    move, you would need to prompt your -- your probation
13    officer that you are -- that you are on the move in some
14    respect.  Do you understand?
11:32:16  15         THE DEFENDANT:  I will do it.  Yes, I
16    understand and I will do it.
17         THE COURT:  Yes.  And as relates to any medical
18    conditions or any emergency that might arise, you certainly
19    have the right to be absent from your home at that time.
11:32:27  20              Do you live at 540 Pinehaven here in
21    Houston?
22         THE DEFENDANT:  Yes, I do.
23         THE COURT:  Is that the address where you will
24    be residing during the course --
11:32:37  25         THE DEFENDANT:  Yes, it is, Your Honor.

1          THE COURT:  You have or have you already not

2     surrendered your passports and other travel documents?

3          THE DEFENDANT:  I have.

4          THE COURT:  Are you prepared to do that?  All

11:32:46   5     right.  Do you also understand that you are not to possess

6     any firearms, or ammunition, or destructive devices in your

7     home during the course of this -- this bond?

8          THE DEFENDANT:  No, I don't have any of that.

9     I don't have.

11:33:00  10          THE COURT:  Yeah.  But I don't want anybody

11    else to have it.

12          THE DEFENDANT:  I am not going to have it.

13          THE COURT:  I don't want anybody else to have

14    them there either.

11:33:05  15          THE DEFENDANT:  No, nobody else will have it.

16          THE COURT:  Okay.  Very good.  And as well, if

17    there is a need for medication, it should be prescribed by

18    a physician who is licensed to prescribe the medication,

19    not just some guy who claims to be a doctor; and you

11:33:20  20    understand that those are the only drugs permitted, and

21    that information should be made available to the probation

22    officer?

23          THE DEFENDANT:  I understand that.

24          THE COURT:  You're not to travel outside the

11:33:31  25    Southern District of Texas except as it may be required to

1 travel, I think, specifically here they say Washington,

2 D.C. for related case purposes.  That's what we're talking

3 about when we say outside the home.  Correct?

4          THE DEFENDANT:  This is correct.

11:33:46 5          THE COURT:  And should not have contact with

6 any co-defendant.  You know who those co-defendants are.

7 You are not to have any contact with them.  If there is

8 contact necessary, your lawyer will do all of that as it

9 relates to the proper way of doing it.  You understand

11:33:59 10 that?

11          THE DEFENDANT:  I know who are all my

12 co-defendants, Your Honor.

13          THE COURT:  All right.  Thank you very much.

14 And as well, not just co-defendants, but there also may be

11:34:08 15 witnesses that you believe or know to be potential

16 witnesses in the case.  You are not to make contact with

17 them as well.

18          THE DEFENDANT:  I will not.

19          THE COURT:  And if pretrial services requires

11:34:19 20 you to report in at a certain time and in a certain way,

21 you understand you're obligated to do that?

22          THE DEFENDANT:  Yes, I understand that.

23          THE COURT:  Are there any other conditions or

24 concerns that the government might have?

11:34:30 25          MS. EDWARDS:  No additional specific

1 conditions, Your Honor.  Just the usual.

2          THE COURT:  These are the specific conditions.

3 There may also be some general conditions.  What I am going

4 to have to do is send you back to the magistrate judge so

11:34:43  5 you can sign off on the appropriate documents.  And these

6 conditions are specific conditions that the Court is

7 putting in place, can be included in that.  This is a

8 record here being kept of it, but whether they write them

9 in, or attach them in some way, you have acknowledged here

11:34:59  10 while under oath that these are the conditions under which

11 you understand your release will be conditioned.  Correct?

12          THE DEFENDANT:  Yes, I understand that.

13          THE COURT:  Counsel do you know of any reason

14 why the Court shouldn't add something else to this list?

11:35:11  15          MR. RUBIO:  No, Your Honor.

16          THE COURT:  All right.  All right.  Anything

17 else?

18          MS. EDWARDS:  Nothing further from the

19 government.  Oh, I'm sorry, Your Honor, I believe we need

11:35:24  20 to apprise the defendant of his appellate rights if he

21 chooses.

22          THE COURT:  Well, he is not ready to appeal

23 yet.

24          MS. EDWARDS:  Thank you.

11:35:31  25          THE COURT:  Unless you are going to appeal the

1  bond.

2          MR. RUBIO:  No, Your Honor.

3          MS. EDWARDS:  I'm sorry, Your Honor.

4          THE COURT:  Because I am going to wait until

11:35:36  5  you're sentenced, and then you can decide if you want an

6  appeal and see if that violates the terms and conditions of

7  your agreement.  Yeah.

8          THE DEFENDANT:  Okay.

9          THE COURT:  Anything else, counsel?

11:35:44  10         MR. RUBIO:  No, Your Honor.

11         THE COURT:  All right.  Thank you very much.

12  Counsel, you may be excused.

13             Mr. De Leon-Perez, you are going to be

14  returned to -- I believe, Judge Palermo may be doing the --

11:35:57  15  the bond information, but you can't do it until 2:00, I

16  understand.  So at 2:00 you will be taken there for these

17  purposes.  By that time the paperwork will have caught up

18  to that location, in any event and, of course, once those

19  bond documents are prepared and are posted, you're going to

11:36:17  20  be released for that purpose.

21         THE DEFENDANT:  Thank you, sir.

22         MR. RUBIO:  Thank you, Judge.

23         THE COURT:  Anything else?  Do you have any

24  questions?

11:36:24  25         THE DEFENDANT:  No.

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

                    THE COURT:  Any questions, counsel?

                    MR. RUBIO:  No, Your Honor.  Thank you very
much.

                    THE COURT:  Thank you very much.  You may be
excused.  Have a good day.

                         You do have, I believe, the September 24
date.

                    MR. RUBIO:  I'm sorry?

                    THE COURT:  You do have the sentencing date.  I
think we gave you that document.

                    MR. RUBIO:  I do, Judge.

                    THE COURT:  Very good.  Thank you.  Have a good
day, gentlemen, lady.

                         By the way, you all didn't give me an
order on that motion, did you?

                    MR. JOHNSON:  No, Your Honor.  We can submit an
agreed order.

                    THE COURT:  Yeah.  The reason I am asking is
the agreed order might need to go through counsel or at
least whatever.  I might need to sign it.  I don't know,
Judge Palermo -- I don't know how she is going to go about
incorporating these conditions into the bond, but whatever
facilitates it, help her out.

                    MR. PEARSON:  I think our plan had been to
orally advise her, but we are happy to follow up with

1  something in writing, Your Honor.

2          THE COURT:  If she requires it.  Thank you very

3  much.

4  (Concluded at 11:37 a.m.)

5              COURT REPORTER'S CERTIFICATE

6

7      I, Kathleen K. Miller, certify that the foregoing is a

8  correct transcript from the record of proceedings in the

9  above-entitled matter.

10

11 /s/_____

    DATE: July 24, 2018    Kathleen K. Miller, RPR, RMR, CRR

12

13

14

15

16

17

18

19

20

21

22

23

24

25