UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| VS. | § § § § | Criminal No. 4:17-CR-000514 |
| JAVIER ALVARADO-OCHOA | § § § | |
| Defendant. | § | |

**DEFENDANT JAVIER ALVARADO OCHOA'S
REPLY IN SUPPORT OF MOTION TO DISMISS**

In its haste to try to extend jurisdiction over citizens of foreign countries, the Government in this case brought charges against Javier Alvarado-Ochoa ("Alvarado") for money laundering and conspiracy to launder money where he never stepped foot in the United States as part of the alleged scheme because it could not do so directly under the Foreign Corrupt Practices Act ("FCPA"). This amounts to an attempted end-around that would effectively nullify well-reasoned case law and the clear intent of Congress. There is a presumption against the extraterritorial application of United States criminal statutes and, in this case, the Government cannot overcome that presumption. For that reason, because the Government's error is unfixable, and in required deference to principles of international comity, which are evident and weighty here, all of the charges against Alvarado must be dismissed.

*First*, the charges of conspiracy to violate the money laundering statute must be dismissed because judicial precedent forecloses the Government's attempt to support an Anti-Money Laundering Act ("AMLA") charge with the predicate act of a conspiracy to violate the FCPA by a foreign national who is not, in the first place, subject to the FCPA. Similarly, the Government

1

may not make its essential claim of domestic wire fraud extraterritorial by disguising it as FCPA-predicated "money laundering."

***Second***, because the highest criminal court in Spain has already rejected the Government's request to extradite Alvarado, ruling that the allegations made in this criminal case are substantially similar to those being investigated in Spain and should, consequently, proceed not in the United States but in Spain, the instant case should be dismissed in deference to the caselaw explaining the mandates of international comity and the laws governing relations between sovereign nations.

**I.      The AMLA Cannot Serve as an End-Around the Law Limiting the Application of the FCPA to Foreign Nationals.**

As set forth below, as to strictly foreign nationals, liability under the FCPA is rightly limited to those physically present in the United States during the time of the alleged offense. To this end, "[c]ourts in applying criminal laws generally must follow the plain and unambiguous meaning of the statutory language." *Salinas v. United States,* 522 U.S. 52, 57 (1997) (cited by *United States v. Rainey*, 757 F.3d 234, 241 (5th Cir. 2014)). "[O]nly the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language." *United States v. Albertini,* 472 U.S. 675, 680 (1985) (citations omitted); *see also Dowling v. United States,* 473 U.S. 207, 212–214 (1985) (penal laws are to be strictly construed).

Like RICO, which is a vessel for a general set of circumstances, called for descriptive purposes "racketeering," the AMLA is a vessel for the *otherwise legal circumstance* of "processing money". Both statutes allow prosecutors and courts, for the sake of efficiency in the administration of justice, to fill the respective vessels with allegations that defendants have created a situation involving the commission of "predicate offenses." See *United States v. Santos*, 553 U.S. 507, 517 (2008). For example, because neither RICO nor AMLA itself outlines a criminal charge, wire fraud is capable of being a predicate offense, at least domestically, under both RICO and AMLA. See

2

*Pasquantino v. United States*, 544 U.S. 349, 383 (2005) (dissenting on other grounds). In many cases, the Government even fills the vessel, the AMLA, with predicate criminal offenses and then, as if it were building Russian nesting dolls, makes the predicate-filled *AMLA* a criminal predicate offense for RICO. *See, e.g.*, *United States v. Herrera*, 466 F. App'x 409, 422 (5th Cir. 2012) (noting conviction on "predicate RICO offense of conspiracy to commit money laundering"); *Absolute Activist Value Master Fund Ltd. v. Devine*, 233 F. Supp. 3d 1297, 1322 (M.D. Fla. 2017) (stating the "RICO predicate acts attributed to defendant all flow from the efforts to conceal and preserve the proceeds of the successful securities fraud scheme" and listing numerous AMLA predicate offenses).

### A.   Counts 1, 3, 13, 15-17 Fail to Allege Alvarado is in the Category of Persons Covered by the FCPA's Extraterritorial Provisions Under Existing Law.

Paraphrasing the Second Circuit, "Because [Alvarado] is not an American citizen, was not employed by [an] American subsidiary, and did not enter the United States while allegedly working on [any] scheme, he falls outside the category of persons directly covered by the FCPA." *United States v. Hoskins*, 44 F.4th 140, 145 (2d Cir. 2022) ("*Hoskins II*").

### B.   The Government May Not Charge Alvarado with *Conspiring* to Commit FCPA-Related Crimes He Could Not Have Committed as a Principal (Counts 1 and 13).

Facing the locked front door categorically ruling out *an FCPA violation*, the Government, in Counts 1 and 13, has tried to tiptoe around to the backdoor, charging Alvarado with a "conspiracy" to violate the money laundering statute founded directly on what the Government claims to be the "unlawful activity" of . . . *an FCPA violation*. The Government's backdoor stratagem was rejected analogously by the Supreme Court in *RJR Nabisco*, more directly by the Fifth Circuit in *Castle*, and completely by the extraordinarily thorough and well-reasoned opinion of the Second Circuit in *United States v. Hoskins* ("*Hoskins I*"), 902 F.3d 69, 76 (2d Cir. 2018),

3

where the Government, as it does here, contended that the defendant "was liable under the FCPA as a *co-conspirator*" to an FCPA violation." *Id*. (emphasis added).

First, we can be sure the Supreme Court would employ the same reasoning here that it used in *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335 (2016) – where it rejected the misuse of the FCPA as a predicate act under RICO – to reject the Government's effort here to misuse an FCPA conspiracy as a predicate offense under the AMLA. In applying its extraterritoriality standard in *RJR Nabisco*, the Supreme Court held that RICO applied in that case "only to the extent that the predicates" on which RICO charges could be founded "themselves apply territorially." *Id*. at 339. "Foreign conduct," in particular, "must violate a predicate statute that" -- unlike the FCPA as applied to Alvarado – "manifests an unmistakable congressional intent to apply extraterritorially," *id*., because "when a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms." *Id*. The Court explained that statutes such as RICO or the AMLA, which require an underlying predicate, "must be analyzed independently to discern whether they permit extraterritorial application." Moreover, "generally, the extraterritorial reach of an ancillary offense like aiding and abetting or conspiracy is coterminous with that of the underlying statute." *Hoskins I*, 902 F.3d at 96 (citing cases).

The Second Circuit has exhaustively analyzed the question in *Hoskins I*. Congress did not intend FCPA predicates to apply extraterritorially over Alvarado. The Government may not evade Congress' intent by resorting to the AMLA's ancillary FCPA offenses of aiding, abetting, and conspiracy as its predicate for "unlawful" offenses. The Supreme Court's analysis in *RJR Nabisco* is in accord: just like the RICO statute whose extraterritorial reach through the FCPA was found wanting there, the AMLA does not "create new substantive offenses, but merely allow[s] liability for other legal violations." *Hoskins I*, 902 F.3d at 96.

4

That AMLA is merely a vessel for other liability is exactly why the Government tried to fill up its AMLA counts against Alvarado with underlying violations of the FCPA. But just as the FCPA could not give extraterritorial reach to the RICO claims in *RJR Nabisco*, the FCPA-based conspiracy claims here cannot confer such reach on the AMLA. The "government may not expand the extraterritorial reach of the FCPA by recourse to the conspiracy and complicity statutes." *Hoskins I*, 902 F.3d at 97. As the Second Circuit pointed out regarding the defendant in *Hoskins*, "the presumption against extraterritoriality bars the government from using the conspiracy and complicity statutes to charge Hoskins with any offense that is not punishable under the FCPA itself," including the charges of conspiracy and complicity to violate the FCPA, "because the FCPA clearly dictates that foreign nationals may only violate the statute outside the United States if they are agents, employees, officers, directors, or shareholders of an American issuer or domestic concern." *Id.* Alvarado, of course, is not alleged to be any of these.

The Supreme Court's reasoning in *RJR Nabisco* allows us to *extrapolate* that the Government's inability to invoke the FCPA extraterritorially as a predicate act under RICO in that case means that it is unable to invoke the FCPA extraterritorially as a predicate act under the AMLA here. But the Fifth Circuit has gone as far as to *directly* foreclose the misuse of the general conspiracy statute in combination with the FCPA, *see United States v. Castle*, 925 F.2d 831, 832 (5th Cir. 1991), just as the Government is trying to do here with an *AMLA-flavored* conspiracy to violate the FCPA. *Castle* has already asked and answered "whether foreign officials," like Alvarado, whom the Government "cannot prosecute under the FCPA itself, may be prosecuted under the general conspiracy statute for conspiring to violate the Act." *Id*. Substitute "an AMLA conspiracy" for "the general conspiracy statute," and the result is precisely the current case. The Fifth Circuit in *Castle* answered *no*: foreign officials like Alvarado may not be prosecuted under a

5

conspiracy count to violate the FCPA. The Court observed that where, as here, the FCPA created definite categories of persons liable under it, Congress made clear it had "absolutely no intention" of allowing prosecutors to depart – whether via the backdoors of the AMLA, RICO, or conspiracy statutes – from the clearly defined categories of FCPA-liable persons to "prosecut[e] the foreign officials involved." *Id*. at 834.

In short, even before *RJR Nabisco* shut the door on the Government's ability to levy conspiracy to violate the FCPA against a person not capable of violating the FCPA, even before *Hoskins I and II* persuasively recommended that this Court shut the very door before us now, that of abusing conspiracy charges to reach foreign nationals under the FCPA, the Fifth Circuit in *Castle* spoke directly to this Court's situation today:

> Based upon the language of the statute and the legislative history, ***this Court finds in the FCPA*** what the Supreme Court in *Gebardi* found in the Mann Act: ***an affirmative legislative policy to leave unpunished a well-defined group of persons [even if they] were necessary parties to the acts constituting a violation of the substantive law***. The Government has presented no reason why the prosecution of Defendants ... should go forward in the face of the congressional intent not to prosecute foreign officials.

*Id.* at 836 (emphases added). In language directly applicable to the more general AMLA statute, the *Castle* court concluded, "it would be absurd to take away with the earlier and more general conspiracy statute the exemption from prosecution granted to foreign officials by the later and more specific FCPA." *Id*.

The Government's footnoted response to these arguments is three-fold and fails thrice. First, it says, "many of these arguments," though it does not and cannot identify which, "were recently rejected by the Fifth Circuit" in the March 2, 2023 "Rafoi/Murta Opinion" at 5-9. *See* Govt. Resp. at 11 n.6. The Government has it wrong. The Fifth Circuit in *Rafoi/Murta* made absolutely clear that Rafoi and Murta, unlike Alvarado, were chargeable under the FCPA as *agents*: "The indictment *specifically alleges* that both Rafoi and Murta acted as '*agents of domestic*

6

*concern*' as that term is used in the FCPA." Op. at 8 (emphasis added). Indeed, the Fifth Circuit stressed, "This paragraph is *incorporated into every count* with which Defendants are charged." *Id*. (emphasis added). "Viewed practically," the court went on, "this *express characterization* of their agent-of-a-domestic-concern status is enough to be put on notice of the charge *and agency theory asserted against them* such that they may prepare a defense." *Id*. (emphasis added).

The Superseding Indictment makes no such specific allegations of agency against Alvarado. It makes no such incorporation into every count. It makes no such "notice of the charge" and the crucial "agency theory" against Alvarado, without which there could be no charge at all. The Government may not now will into existence such specific allegations, incorporations, and notices of its charge and agency theory. Its indictment is completely deficient, and it is too late to amend it in these pleadings.

But what about Alvarado's argument, drawn from *RJR Nabisco*, *Castle*, and *Hoskins I*, that the Government may not try to sneak FCPA-related charges through the backdoor of an AMLA or FCPA "conspiracy"? Was that argument "recently rejected by the Fifth Circuit," as the Government argues? It was not, as a cursory examination of the opinion will confirm.[1]

The Government's second, footnoted argument is that Alvarado "was not charged with violating the FCPA. He was only charged with violating the money laundering statute." That's not, by any stretch, true. Here, the Government expressly and repeatedly *named the FCPA* as being

---

[1] In *Rafoi/Murta*, the Fifth Circuit said, of these precise arguments, "Since they were not ruled upon by the district court, this Court is not required to address these alternative arguments for or against dismissal. And we decline to rule on these arguments now." Op. at 10 (citation omitted) (citing cases saying the district court "should have the opportunity" to "better address" such arguments). The Court of Appeals expressly considered only the existence of a "physical-presence" requirement of the AMLA. *See* Op. at 15 (concluding there was no such requirement). It did not address whether Rafoi and Murta could be charged with conspiracy to violate the money laundering statute through "unlawful activity" of the FCPA (Rafoi Count 3; Murta Counts 13, 18, 19) or conspiracy to violate the FCPA (Rafoi Count 2; Murta Count 14), or whether those counts should have been dismissed under the reasoning of *Hoskins I*. This Court may and should address those arguments now.

the "unlawful activity" that supposedly triggered Alvarado's money laundering liability. The FCPA *is* "the charge". *Compare* Govt. Resp. at 11 n.6 *with* Counts 1, 3, 13, 15-17. Once again, the Government has tied its own hands in the Superseding Indictment, and it cannot be rescued from its terms.

Third, confronted with, for it, the devastating holding in *Hoskins I*, the Government suggests *Hoskins II* somehow overrides *Hoskins I* because *Hoskins II* "left the money laundering charges intact." *See* Govt. Resp. at 11 n.6. But because the *Hoskins II* court did not address the money laundering charges at all,[2] saying that the court left the charges "intact" is akin to saying that the U.S. Army, during the Second World War, left Canada "intact." The Government concludes its argument as if it had issued an indictment that did *not* specify the FCPA as the "unlawful activity," saying that "The FCPA [conspiracy] holding of *Hoskins* simply does not apply to the money laundering charges against Defendant." *Id.* Except that it does, because in every count against him, the Government charged Alvarado with *conspiracy* to launder money that was supposedly the proceeds of "unlawful activity" made into such *by the FCPA*. *Hoskins*, and *Castle* too, involved (1) an alleged conspiracy (2) by a foreign national to violate (3) the FCPA via (4) bribery charges that (5) could not be brought against a foreign national. The instant case, in all material respects identical, involves a (1) conspiracy (2) by a foreign national to violate the (3)(a) predicate-requiring AMLA via (b) FCPA (4) bribery charges that (5) may not be brought against a foreign national.

This Court must shut the back door of conspiracy and reject the Government's theory that a foreign national may be "guilty as an accomplice or a co-conspirator for an FCPA crime that he

---

[2] *Hoskins II* made clear that the "the government brought [its] appeal" only regarding the district court's grant of the motion for acquittal on the FCPA counts, while Hoskins cross-appealed only issues relating to the Speedy Trial Act, the Sixth Amendment, and two jury instructions. 444 F.4th at 145.

or she is incapable of committing as a principal," as *Hoskins II* put it, 44 F.4th at 145, and dismiss all counts waiting at the backdoor of conspiracy and complicity: Counts 1 and 13.

### C. The Government May Not Make Domestic Wire Fraud Extraterritorial by Disguising It as FCPA-Predicated "Money Laundering."

This Court must also reject the Government's attempt to end-run Congress' refusal to embed extraterritoriality into the wire fraud statute by trying to frame unlawful wire transfers as not wire fraud offenses but disguised FCPA predicates to the AMLA. The Government states, "The Superseding Indictment alleges that Defendant caused, aided and abetted, [sic] *the making of the wire transfers* at issue . . . and that the money laundering conduct took place in the Southern District of Texas, and elsewhere." Govt. Resp. at 12 (emphasis added). The Government's attempt to lasso a foreign national for allegedly making wire transfers as part of an overwhelmingly international scheme runs afoul of the strong legal presumption against applying criminal statutes extraterritorially. The Government has creatively elected to pursue AMLA charges against a foreign national operating outside the U.S. because Congress has expressed no extraterritorial intent to prosecute wire transfers via the most obvious vehicle for doing so: the wire fraud statute.

The Government has limited options for charging a foreign national with attempting to use wire transfers to launder money that allegedly comes from bribes. The Government did not, of course, allege Alvarado conducted, or attempted to conduct, the alleged money-laundering wire transfers while he was in the United States. Consequently, the Government urges a violation of Alvarado's right to due process and its own obligation to respect the principles of international comity by arguing that even though a defendant was neither a citizen of nor present in the United States when he allegedly used wire transfers to launder money, he may, nevertheless, be prosecuted for the alleged wire transfers.

9

The Supreme Court in *RJR Nabisco* developed a two-step framework for analyzing extraterritoriality issues. First, a court must ask "whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco*, 579 U.S. at 326. This analysis is not difficult in the case of the wire fraud statute itself, for it makes no express mention of application outside the United States. The wire fraud statute, 18 U.S.C. §1343, like the FCPA in Alvarado's case, "does not have extraterritorial application." *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 555 (S.D.N.Y. 2018) (concluding wire fraud may not serve as a predicate act for a RICO claim premised on foreign-based activities).

And what of the second prong of the *RJR Nabisco* analysis, that of examining the "focus" of the wire fraud statute for extraterritorial intent? "[T]o determine the domestic reach of the wire fraud statute . . . , the Court must "look[ ] to the statute's focus," and "[i]f the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but *if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory*." *United States v. Napout*, 332 F. Supp. 3d 533, 552–53 (E.D.N.Y. 2018), *aff'd,* 963 F.3d 163 (2d Cir. 2020) (emphasis added; citing *RJR Nabisco*). Several district courts have held that a "domestic" application of the wire fraud statute has three requirements: "(1) a defendant or co-conspirator commits **a substantial amount of conduct in the United States**, (2) the conduct is integral to the commission of the scheme to defraud, and (3) at least some of the conduct involves the use of U.S. wires in furtherance of the scheme to defraud." *Napout*, 332 F. Supp. 3d at 554 (emphasis added); *see also United States v. Gasperini*, No. 16-cr-441 (NGG), 2017 WL 2399693 at *8 (E.D.N.Y. June 1, 2017); *United States*

10

*v. All Assets Held at Bank Julius*, 251 F.Supp.3d 82 (D.D.C. 2017); *United States v. Prevezon Holdings, Inc.*, 122 F.Supp.3d 57, 71-72 (S.D.N.Y. 2015)).

Here, the Government's case fails at the first prong of the analysis: nearly the entirety of the Government's case occurred *outside* of the United States. The Superseding Indictment contains no allegations amounting to a "substantial amount of conduct in the United States" by Alvarado. Thus, the Government's attempt to use mere wire transfers that allegedly touched the United States cannot rebut the presumption against asserting jurisdiction over overwhelmingly foreign activities. The mere fact that "some domestic activity is involved in [a] case" cannot create a level of domestic focus in a matter capable of rebutting the presumption against extraterritoriality. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266 (2010). Where, as here, "it is clear that the scheme was principally foreign in nature and only incidentally touched the United States," the Government may not seek to charge foreign nationals with allegedly unlawful wire transfers. *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 557 (S.D.N.Y. 2018) (citing *Sullivan v. Barclays PLC*, 2017 WL 685570 at 33–34 (S.D.N.Y. Feb. 21, 2017) (concluding that allegations of similar conduct were "organized outside of the United States through a European trade association," and that "[t]he use of United States wires was, at most, incidental"); *Laydon v. Mizuho Bank, Ltd.*, 2015 WL 1515487 at *8–9 (S.D.N.Y. Mar. 31, 2015), *aff'd sub nom. Laydon v. Cooperatieve Rabobank U.A.*, 51 F.4th 476 (2d Cir. 2022), and *aff'd sub nom. Laydon v. Cooperatieve Rabobank U.A.*, 55 F.4th 86 (2d Cir. 2022) (concluding that plaintiffs could not pursue RICO claims "based on the alleged actions of foreign and international institutions that submitted false information to the BBA and [Japanese Bankers Association], located in London and Tokyo, respectively").

"[S]ome incidental domestic activity" by Alvarado that is "principally foreign in nature" is all the Government alleges here, where it alleges that wire transfers were used in the much larger context of a sprawling *international* conspiracy to violate the FCPA by facilitating bribes. Where a statute's language "provides for *some* extraterritorial application, the presumption against extraterritoriality operates to limit that provision *to its terms*." *RJR Nabisco*, 579 U.S. at 339 (citation omitted) (emphases added). And just as a RICO violation "may be based on a pattern of racketeering that includes predicate offenses committed abroad" *only* if "each of those offenses violates a predicate statute that is itself extraterritorial," *id*. at 340, the Government here may not use predicate offenses of the AMLA, such as the FCPA or wire fraud, that are not themselves extraterritorial. Tellingly, neither the FCPA nor the wire fraud statute evidences any congressional intent to impose criminal liability for transactions that only *incidentally* occurred in the United States. "The drafters of §1343 did not envision the statute applying to internationals bouncing wires into and out of the United States, with no participation from any U.S. resident, in order to defraud international entities." *United States v. Hussain*, 2017 WL 4865562, at *4 (N.D. Cal. Oct. 27, 2017), *aff'd*, 972 F.3d 1138 (9th Cir. 2020).

In short, the Government's vessel for predicate offenses here, the AMLA, is a leaky one that cannot keep afloat either violations of the FCPA or the wire fraud statute. The Supreme Court has warned against courts "discerning," on their own, that Congress may have intended to criminalize behavior that Congress did not expressly criminalize, explaining that "disregard of the presumption against extraterritoriality .... has been repeated over many decades by various courts of appeals ... That has produced a collection of tests for divining what Congress would have wanted, complex in formulation and unpredictable in application." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255–56 (2010). Accordingly, and in addition to the other grounds already

12

articulated because Congress did not clearly intend to make foreign nationals liable for wire transfers – whether through the vehicle of the FCPA or the wire fraud statute – all counts against Alvarado must be dismissed.

## II. The Criminal Charges Against Alvarado Are the Same as Those Under Investigation in Spain; Principles of International Comity Counsel Dismissal.

The Government breezes past the Spanish proceedings against Alvarado with two footnotes and fails to take those proceedings as seriously as Supreme Court precedent requires. *See* Govt. Resp. at 8 n.2 and 10 n.5. For example, the Government describes the Spanish proceedings as "a pending related, yet different, investigation in Spain." *Id*. at 8 n.2. It also says the "Spanish proceeding is a suit filed by PDVSA against Defendant and is in no way running in parallel with the government's long running investigation into bribery and corruption at PDVSA." *Id*. at 10 n.5.

Both such statements made by the Government are patently wrong. The Government has either not taken the time to read the Spanish court's ruling denying the Government's own request to extradite Alvarado to the United States, or the Government has deliberately misrepresented the nature and status of the Spanish proceedings. Neither is factual or good. The case in Spain is demonstrably not a "suit filed by PDVSA" against Alvarado, as the Government says it is. The Spanish proceeding is a criminal proceeding originally filed by the Spanish Special Prosecutor Against Corruption and Organized Crime (Fiscalía Especial contra la Corrupción y la Criminalidad Organizada) on June 21, 2017. The fact that, as permitted under Spanish law, PDVSA filed a separate criminal complaint (against Alvarado in Spain on May 30, 2017, and that, subsequently, both complaints were consolidated into one) in no way changes the nature of the Spanish case: a criminal proceeding being conducted by a criminal court. The proceedings in Spain started before the Superseding Indictment, the first charging instrument in the United States implicating Alvarado.

That is, it was not until after the criminal proceeding in Spain was well underway that the Government sought and obtained the Superseding Indictment in this case, after which it submitted a request to the Spanish government for Alvarado's extradition. A provisional arrest warrant was issued in Spain, and Alvarado was imprisoned in Spain for more than four and a half months as the extradition request wound its way through the Spanish court system.

The court of first instance in Spain denied the Government's request to extradite Alvarado, and the Government appealed that decision to the highest national criminal court in Spain, the "Audiencia Nacional." The criminal division of the Audiencia Nacional (the "Sala de lo Penal"), comprised of seventeen (17) judges, issued a unanimous ruling on February 11th, 2020, affirming the lower court's ruling. That court, the Sala de lo Penal, held that the facts under investigation in the Spanish criminal court proceeding were very closely related to those the subject of the Government's Superseding Indictment and, as such, it was more feasible that the Government submit its criminal complaint to the Spanish authorities so that it could be tried in Spain, as contemplated by international law. The entire decision of the Audiencia Nacional is attached as Exhibit 1.

The U.S. Government is on notice of the ruling by the 17-member Audiencia Nacional. In fact, U.S. officials from the Department of Justice were invited to attend, and they were present in the court room when the Audiencia Nacional ruled that Alvarado's request for extradition would be denied.[3]

It is completely disingenuous and materially misleading for the Government now to mischaracterize the nature of the Spanish proceedings, purporting to distinguish them from the

---

[3] Alvarado's long-time collaboration with the U.S. Government resulted in charges made by the Maduro government that he was a "U.S. collaborationist," as illustrated in Exhibit 2, a summary from a recent press conference of the Attorney General of Venezuela, Tarek William Saab.

14

"criminal case pending in the United States" by characterizing the Spanish proceedings as a "suit filed by PDVSA against Defendant [that] is in no way running parallel with the government's long-running investigation into bribery and corruption at PDVSA ..." Govt. Resp. at 10, n.5. As the Government knows, in Spain, a person, whether natural or legal, may file a criminal complaint as the accuser. Such a complaint is investigated in a legal proceeding conducted by a criminal court and might, at its conclusion, result in an indictment. The Government knows that that is how the criminal law system operates in Spain, yet it fails to acknowledge it. Furthermore, because he is under investigation in the Spanish legal proceedings, Alvarado has been ordered to surrender his passports to the Spanish government and is prohibited from traveling outside Spain. Characterizing Alvarado as a "fugitive," as the Government does in its response, is a gross misnomer, designed to portray him negatively in violation of the presumption of innocence that the law accords him. The Government's invocation of the fugitive disentitlement doctrine is, consequently, a red herring.

Further, this open omission on the part of the Government of the criminal process carried out in Spain, ignoring the essential allegations and documents provided under oath by PDVSA itself, is the basis of the statement at page 10 of the Government's Response, "Defendant dedicates the first twenty-two pages of his fifty-page motion to a lengthy factual summary of PDVSA's purchasing processes and his role within the company, one in which he purports to refute many of the factual allegations in the Superseding Indictment. (DE 363 at 4-26). The government disagrees with Defendant's self-serving version of the facts..." Indeed, Alvarado devoted a good number of pages of his Motion to Dismiss to explain, based on these facts presented in the Spanish case, why the Superseding Indictment is fundamentally wrong, not even sufficient on its face.

As we have already expressed, such errors are due to the fact that the Government first ignored the existence of this parallel process in Spain, and second, concealed from the Grand Jury the documents and other allegations provided by Alvarado years before to the prosecutors of the Department of Justice, as well as to officials of the State Department, thus obtaining the fatally-flawed Superseding Indictment from the Grand Jury.[4]

In any event, were the Government to prevail, the result would constitute an affront to basic principles of foreign relations. Notably, international comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Derr v. Swarek*, 766 F.3d 430, 437 (5th Cir. 2014) (citing *Hilton v. Guyot*, 159 U.S. 113, 164 (1895)).

Dismissal of a suit on international comity grounds is appropriate when there is litigation pending in a foreign forum or, even absent such litigation, when allowing a case to proceed in the United States would intrude on the interests of a foreign government. *Protexa v Marmex*, (5th Cir. No. 08-41021, filed December 9, 2009), citing *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004). That is the case here.

The Government was invited to participate in proceedings relating to the same facts and allegations in Spain. It did not decline because it simply ignored the invitation. The highest criminal court in Spain, after due consideration, decided to retain jurisdiction. The Government

---

[4] Alvarado will be sending a detailed letter to the Department of Justice Office of Professional Responsibility and likely other offices reporting this and related matters as the Government's conduct is inconsistent with the Justice Manual and other Government policies regarding the conduct of those responsible for matters of this magnitude implicating foreign officials and former officials.

effectively asks this Court to overrule the decision of the highest criminal court in Spain. Alvarado, in turn, asks this Court to decline that implicit invitation.

## CONCLUSION

Defendant Javier Alvarado Ochoa asks the Court to grant his motion and dismiss all counts pending against him with prejudice and requests such other and further relief to which he may be entitled.

Respectfully submitted,

GREGOR | WYNNE | ARNEY, PLLC

By: */s/ Michael J. Wynne*
Michael J. Wynne
Texas Bar No. 00785289
Cameron Powell
DC Bar No. 459020 (*pro hac vice*)
Adam Weiss
Texas State Bar No. 00785207
909 Fannin Street, Suite 3800
Houston, TX 77010
Telephone: (281) 450-7403
mwynne@gwafirm.com

**COUNSEL FOR JAVIER ALVARADO OCHOA**

## CERTIFICATE OF SERVICE

I certify that on this 19th day of April, 2023, I served a true and correct copy of the foregoing reply on all counsel of record by notice of electronic filing.

*/s/ Michael J. Wynne*
Michael J. Wynne