# EXHIBIT 1



**AUDIENCIA NACIONAL**
**SALA DE LO PENAL**
**PLENO**

ADMINISTRACION
DE JUSTICIA

**RECURSO DE SÚPLICA N° 9/20**
**ROLLO DE SALA SECCIÓN 2ª N° 38/19**
**PROCEDIMIENTO DE EXTRADICIÓN N° 21/19**
**JUZGADO CENTRAL DE INSTRUCCIÓN N° 4**


## A U T O   N°  11/20


**Iltmos. Sres. Magistrados:**

Dª **Concepción Espejel Jorquera**        (Presidente)
D. **Alfonso Guevara Marcos**
D. **José Antonio Mora Alarcón**
D. **Francisco Javier Vieira Morante**
Dª **Teresa Palacios Criado**
Dª **Carmen Paloma González Pastor**
Dª **María Riera Ocáriz**
D. **Eduardo Gutiérrez Gómez**
D. **Fernando Andreu Merelles**
D. **Julio de Diego López**
D. **Juan Francisco Martel Rivero**     (Ponente)
D. **José Ricardo de Prada Solaesa**
Dª **Carolina Rius Alarcó**
D. **Carlos Francisco Fraile Coloma**
D. **Ramón Sáez Valcárcel**
Dª **María Fernanda García Pérez**
D. **Fermín Javier Echarri Casi**



En la Villa de Madrid, a once de febrero de dos
mil veinte.

1

**ANTECEDENTES DE HECHO**



**ADMINISTRACION
DE JUSTICIA**

**PRIMERO.-** La Sección 2ª de la Sala de lo Penal de esta Audiencia Nacional dictó el día 16 de diciembre de 2019, en el procedimiento de referencia, auto nº 42/2019, en cuya parte dispositiva el Tribunal acordó:

"**DECLARAR NO PROCEDENTE LA EXTRADICIÓN** solicitada por las autoridades competentes de los Estados Unidos de América en relación a **JAVIER OCHOA ALVARADO,** de nacionalidad venezolana y española, en relación con la Orden Internacional de Detención (OID) emitida el 26.04.2019 por el Tribunal de Distrito de los Estados Unidos para el Distrito Sur de Texas y la Nota Verbal nº 479 de fecha 21 de junio de 2019 de la Embajada de Estados Unidos de América en Madrid, sin perjuicio de lo previsto en el artículo V del Anexo".

**SEGUNDO.-** El **Ministerio Fiscal,** en escrito presentado el 23 de diciembre de 2019, fechado tres días antes, interpuso recurso de súplica contra aquella resolución, solicitando que se revoque, por las consideraciones que se vierten en el referido escrito.

Dado traslado del recurso a la parte reclamada el día 26 de diciembre de 2019, por el Procurador D. Federico Gordo Romero, en nombre y representación del reclamado **Javier Ochoa Alvarado,** bajo la dirección del Abogado D. Antonio Catalá Polo, se opuso a la estimación del mismo en escrito presentado el día 28 de diciembre de 2019, de la misma fecha, en el que solicitó la confirmación de la resolución recurrida, remitiéndose las actuaciones el día 8 de enero de 2020 a la Presidencia de la Sala de lo Penal de esta Audiencia Nacional, a los efectos de resolución del recurso formulado.



**ADMINISTRACIÓN
DE JUSTICIA**

**TERCERO.-** El día 7 de febrero de 2020 la Sala de lo Penal se constituyó en Pleno, deliberó y resolvió sobre el recurso planteado, acordando dictar la presente resolución.

Ha actuado como Ponente el Magistrado Iltmo. Sr. D. Juan Francisco Martel Rivero, en virtud de designación efectuada el día 29 de enero de 2020.

## FUNDAMENTOS JURÍDICOS

**PRIMERO.-** El **Ministerio Fiscal** ejercita su pretensión revocatoria del auto que declara improcedente la extradición del reclamado **Javier Ochoa Alvarado** a Estados Unidos de América, a efectos de poder ser juzgado por la presunta comisión de hechos constitutivos de los delitos de conspiración para cometer el blanqueo de dinero, tipificado en la Sección 1956 apartado (h) del Título 18 del Código de Estados Unidos de América (cargos 1 y 13); blanqueo de dinero, previsto y penado en las Secciones 1956 (a)(2)(B)(i) y 2 del Título 18 del Código de los Estados Unidos de América (cargo 3), y blanqueo de dinero, previsto y penado en las Secciones 1956 (a)(2)(A) y 2 del Título 18 del Código de los Estados Unidos de América (cargos 15 a 17), según se recoge en la demanda extradicional presentada y en relación con el delito precedente de prácticas de comercio internacional prohibidas (The Foreign Corrupt Practices Act of 1977 "FCPA"), previsto en la Sección 78dd-2 y 3 del Título 15 del Código de los Estados Unidos. Delitos que se corresponden con el tipo de pertenencia a organización criminal del artículo 570 bis del Código Penal español y con el tipo del blanqueo de capitales del artículo 301 del Código Penal, en relación con delitos de corrupción en los negocios del artículo 286 bis del Código Penal español.

Se basa el recurso en tres bloques impugnatorios interrelacionados, referentes a la posible adquisición fraudulenta de la nacionalidad española por parte del

3



**ADMINISTRACION DE JUSTICIA**

reclamado; a la carencia de arraigo que tiene en nuestro país el reclamado, y a la inexistencia de litispendencia, que impida su entrega, que puede ser acogida con los límites y suspensiones establecidos en el artículo 19.2 de la Ley de Extradición Pasiva.

**A)** Como primer motivo de recurso, se alega que de la información documental obrante en autos puede inferirse que la nacionalidad española que el reclamado ostenta desde que le fue concedida el 5-12-2017, fue adquirida fraudulentamente. Sin afirmarlo con rotundidad, al Ministerio Fiscal le resultan llamativas determinadas circunstancias producidas en el lapso temporal transcurrido desde que se solicitó hasta que se concedió al reclamado dicha nacionalidad española por residencia, que actualmente comparte con la venezolana de origen.

**a)** Por un lado, se sostiene que el Sr. **Ochoa Alvarado** obtuvo la nacionalidad española en un tiempo muy breve, pues la solicitó el 22-7-2014 y se le concedió el 5-12-2017, superando a la media. A lo que debe añadirse que la huida de Venezuela y la ulterior solicitud y obtención de la nacionalidad española, es inmediatamente consecutiva a la incoación de los procedimientos penales que tiene entablados, tanto en su país de origen como en Estados Unidos de América. Lo que lleva a la parte recurrente a concebir que, con la concesión de la nacionalidad española, el reclamado se blindaba de posibles reclamaciones por parte de Venezuela, cuyo artículo 69 de su Constitución prohíbe la extradición de sus nacionales, que de manera directa afecta al principio de reciprocidad en sus relaciones con España.

**b)** Por otro lado, alude el Ministerio Fiscal a que el reclamado se encontraba empadronado en nuestro país casi seis meses antes de que se jubilara en la empresa Petróleos de Venezuela S.A. (PDVSA), lo que resulta chocante para la parte recurrente, puesto que mal pudo residir en España al tiempo que trabajaba en Venezuela, especialmente cuando la nacionalidad española la obtuvo por residencia.

4



ADMINISTRACION
DE JUSTICIA

**c)** Por lo demás, le resulta curioso a la parte recurrente que el reclamado, una vez obtenida la nacionalidad española, invirtiera el orden de sus apellidos, anteponiendo el materno **"Ochoa"** al paterno **"Alvarado"**, lo que induce a pensar a la parte impugnante que era para sembrar dudas acerca de su identidad.

**d)** Finalmente, asimismo indica el Ministerio Fiscal que el grueso del procedimiento penal que se sigue contra el reclamado en nuestro país no es idéntico a aquél por el que se le reclama para su enjuiciamiento en Estados Unidos de América, pues el procedimiento español se constriñe a esclarecer el blanqueo de bienes que la organización criminal a la que pertenece obtuvo a través de sobornos que se llevaron a cabo en Venezuela y Estados Unidos de América, mientras que en estos últimos países se le reclama para el enjuiciamiento de los hechos constitutivos del ilícito antecedente –presupuesto del delito de blanqueo de los bienes que han sido aflorados en nuestro país–, para lo cual cobra interés su manifestación sobre que quería retirarse en España.

**B)** Como segundo motivo de recurso, se destaca por la parte recurrente que el reclamado carece de arraigo en nuestro país, lo que sin duda favorece que no se haga uso de la cláusula facultativa de la entrega prevista en el artículo IV del Texto Integrado de las disposiciones del Tratado bilateral de extradición y del Tratado de extradición Unión Europea-Estados Unidos de América actualmente vigente.

Ante dicha potestad de concesión o no de la extradición del reclamado, invoca el Ministerio Fiscal los diferentes criterios que han servido de base a esta Sala de lo Penal para decantarse en uno y otro sentido, atendiendo a factores como la gravedad del delito, la vinculación o arraigo del reclamado con el Estado requirente y con el Estado requerido, la posibilidad de enjuiciamiento efectivo en España, las razones de proporcionalidad entre la entrega y su finalidad, la desproporción existente entre el régimen punitivo de los Estados requirente y requerido, la existencia o no



ADMINISTRACION
DE JUSTICIA

de una organización criminal de la que pudiera formar parte el reclamado, el mejor posicionamiento del Estado en el que se encuentren las fuentes de prueba de los ilícitos presuntamente cometidos, la existencia de un procedimiento penal que se esté tramitando en España, la existencia o no de estructuras penitenciarias poco compatibles con el respeto debido a la dignidad humana, y la mayor o menor efectividad del ejercicio de la nacionalidad española por parte del reclamado.

Descendiendo al caso que nos ocupa, a criterio del Ministerio Fiscal recurrente, está mejor posicionado el Estado reclamante para enjuiciar los hechos que se atribuyen al reclamado, en atención a los siguientes criterios: **1.-** La dificultad —o mejor, imposibilidad- de enjuiciar en España los hechos por los que el Sr. **Ochoa Alvarado** es reclamado por Estados Unidos de América, ya que sus autoridades sostienen que las dádivas obtenidas del cohecho perpetrado las urdió en Texas, siendo en dicho Estado donde se ultimaron los sobornos, en los que participaron dos de los principales miembros de la organización desarticulada — tratándose de Roberto Rincón Fernández, alias "Primo", y Abraham Shiera Bastidas, alias "Puma", quienes han reconocido los hechos y han implicado al ahora reclamado, encontrándose allí las pruebas de la comisión delictiva. **2.-** La alegada ausencia de vinculación del reclamado con el Estado reclamante puede paliarse mediante el mecanismo de una entrega temporal plagada de condiciones, incluyendo el cumplimiento de la eventual pena en España. **3.-** En este sentido, si bien se reconoce que existe un procedimiento en España contra el reclamado, se mantiene que se encuentra pendiente de la aceptación de competencia por parte del Juzgado Central de Instrucción nº 3, cuyo procedimiento es posterior en su incoación al tramitado en Estados Unidos de América; como también resulta evidente que el propio Tribunal que dictó la resolución recurrida ha reconocido que los hechos no son del todo coincidentes y que no se trata de procedimientos idénticos.

**C)** Y como tercer motivo de estimación del recurso, vuelve la parte recurrente a hacer mención a la litispendencia, precisando que, más que de un supuesto de litispendencia, nos hallamos ante un caso de doble competencia o ejercicio concurrente de jurisdicciones



**ADMINISTRACION
DE JUSTICIA**

de ámbito transnacional, donde no existe identidad de objetos. Lo que conlleva que haya que accederse a la entrega del reclamado, si bien con los límites o suspensiones que se consideren convenientes, a tenor de lo establecido en el artículo 19.2 de la Ley de Extradición Pasiva, en evitación de la impunidad que implicaría no entregar al reclamado al Estado requirente.

A lo que debe adicionarse que las pruebas del delito —siempre según la parte recurrente- no se encuentran en España sino en Estados Unidos de América; aparte de la extrema complejidad del enjuiciamiento, que es inviable en cuanto a los delitos cometidos en el Estado reclamante, no produciéndose una ruptura de la continencia de la causa, ante la falta de identidad de objetos, reconocida en el propio auto impugnado.

Por todo lo cual se insiste en solicitar la revocación de la resolución recurrida y en que se conceda la entrega —temporal o definitiva- del reclamado al Estado requirente.

**SEGUNDO.-** El recurso de súplica formulado no puede prosperar en ninguna de sus tres interrelacionadas vertientes, puesto que ninguno de los motivos de impugnación, descritos interesadamente por la parte recurrente, constituye causa que lleve a la modificación, en esta fase jurisdiccional, de la tesis denegatoria de la extradición solicitada por Estados Unidos de América. Al contrario de lo sostenido por la parte recurrente, si se accediese a sus pretensiones se crearía un espacio de inseguridad e imprecisión en detrimento del nacional español reclamado y de la normativa aplicable, que ha de ser plenamente cumplimentada por el Estado reclamado.

En líneas generales, las cuestiones sometidas a debate ya fueron convenientemente contestadas en la resolución recurrida. En la misma se indican los datos esenciales obrantes en el procedimiento sobre la pertinencia de la denegación de la entrega del



**ADMINISTRACION
DE JUSTICIA**

reclamado, por la serie de motivos sobre los que muestra discrepancia el Ministerio Fiscal recurrente. Tales consideraciones de la Sección 2ª han de ser ratificadas por esta Sala reunida en Pleno.

A mayor abundamiento, se reitera que, una vez analizadas las actuaciones, se infiere que las alegaciones vertidas en los tres motivos de recurso carecen de consistencia, por las razones que seguidamente se expondrán.

**A)** Respecto a la opción de no entrega, con apoyo en la <u>nacionalidad española</u> que ostenta el Sr. **Ochoa Alvarado**, debemos comenzar indicando que en la resolución recurrida se niega que la reciente adquisición de la nacionalidad española obtenida por el reclamado, tenga el carácter de fraudulenta y solicitada con la finalidad de eludir la acción de las autoridades judiciales norteamericanas, e incluso venezolanas, declarando la regularidad de dicha adquisición de la nacionalidad por residencia, habida cuenta los previos vínculos personales, familiares y patrimoniales del reclamado, quien solicitó dicha nacionalidad el 22-7-2014, mismo año en que le fue concedida la residencia legal en nuestro país, siéndole otorgada la nacionalidad el 5-12-2017 y prestando juramento o promesa el 15-1-2019.

Reexaminando lo actuado, concluimos que no puede sostenerse el alegado carácter fraudulento de tal adquisición de la nacionalidad española, ante la debilidad de los argumentos ofrecidos por la parte recurrente y especialmente porque en modo alguno existe acreditación sobre tal extremo.

En el procedimiento tramitado por la Sección 2ª de esta Sala de lo Penal, consta la acreditación del contenido del expediente de nacionalidad sucesivamente tramitado en el Registro Civil de Madrid y en el Ministerio de Justicia español. Así, en el DVD unido a las tales actuaciones entre los folios 141 y 142, obra información acerca de que el aquí reclamado solicitó la nacionalidad española por residencia el día 22-7-2014,



**ADMINISTRACION
DE JUSTICIA**

acompañando las escrituras de propiedad de tres
inmuebles (vivienda, trastero y plaza de garaje,
adquiridos en Madrid el 10-1-2006: documento n° 6 unido
al sobre del folio 158 del rollo de Sala);
documentación bancaria con diversos pagos y
suministros, que datan del 2012 en adelante, y
tributaria, esta última referida al Impuesto sobre la
Renta de Personas Físicas del ejercicio 2012;
empadronamiento en Madrid desde el 29-5-2013, año en
que se jubiló en la empresa venezolana PDVSA,
concretamente el 1-10-2013, habiendo cesado como
presidente de Bariven S.A. el 30-4-2013 (documento n° 5
unido al folio 158 del rollo de Sala); e inscripción
como residente en España en el registro del Consulado
General de Venezuela de Madrid desde el 6-6-2014.


Consta asimismo que el día 17-11-2014 el
Magistrado Encargado del Registro Civil de Madrid
acordó la incoación del expediente de nacionalidad n°
15524/14, practicándose el mismo día la audiencia al
promotor aquí reclamado, expresando dicho Encargado que
el resultado de la entrevista acredita que no existía
objeción alguna para que el peticionario pueda adquirir
la nacionalidad española, una vez comprobado su
conocimiento del idioma español y el suficiente grado
de integración en la sociedad española. Con informe
fiscal favorable, de fecha 16-12-2014, dicho
Magistrado-Encargado ordenó el 23-12-2014 remitir el
expediento tramitado a la Dirección General de los
Registros y del Notariado del Ministerio de Justicia.
Desde dicho Centro Directivo, se comunicó el 17-4-2017
al promotor del expediente aquí reclamado la entrada de
las actuaciones en la Subdirección General, constando
informe favorable a la concesión de la nacionalidad por
la Comisaría General de Extranjería y Fronteras,
emitido el 27-6-2017, en el que se recoge como primera
concesión de residencia el día 21-5-2012, al que siguen
dos informes favorables más, previos a la resolución de
la concesión de la nacionalidad, uno del propio
Registrador y otro del Subdirector General de
Nacionalidad y Estado Civil. Finalmente, dicha
nacionalidad española fue concedida al solicitante aquí
reclamado por el Director General de los Registros y
del Notariado el 5-12-2017, por delegación del Excmo.
Sr. Ministro de Justicia. En los folios 129 y 132 del
rollo de Sala obran la copia del acta de adquisición de
la nacionalidad española por el Sr. **Alvarado Ochoa,** en
fecha 15-1-2019, quien hizo la promesa correspondiente,
sin renuncia a su nacionalidad venezolana y con



**ADMINISTRACIÓN
DE JUSTICIA**

petición de que le sea invertido el orden de sus apellidos, quedando primero el materno y segundo el paterno, y la copia del certificado literal de nacimiento del interesado, inscrito el 21-1-2019 en el Registro Civil de Madrid. Se le expidió el Documento Nacional de Identidad español, con nº O-6679327-N, el día 30-1-2019 (folio 235 de la pieza de situación personal).

De tan pormenorizados datos no puede inferirse ninguna irregularidad o precipitación en los trámites de concesión de la nacionalidad española por residencia del reclamado. Como tampoco puede extraerse de la petición de inversión de sus apellidos ninguna maniobra de distracción de su identidad. Ni mucho menos concebirse actuación irregular en la vinculación de la fecha de su jubilación y del alegado escaso tiempo de residencia en nuestro país anterior a dicho evento laboral.

Por lo que no podemos estimar este primer motivo de recurso.

**B)** Respecto al segundo motivo del recurso, básicamente dedicado a criticar la tesis del Tribunal acerca de su posicionamiento favorable a la no entrega del reclamado por su nacionalidad española, en combinación con la litispendencia que concurre en España sobre determinados actos con apariencia delictiva que provisionalmente vienen atribuyéndose al reclamado, inicialmente debemos rechazar que el procedimiento penal español penda de la aceptación de la competencia para su conocimiento por parte de la titular del Juzgado Central de Instrucción nº 3, puesto que ésta, con anterioridad al dictado de la resolución recurrida, dictó auto de asunción de dicha competencia española para investigar los presuntos ilícitos penales imputados al reclamado. En efecto, consta en las actuaciones que en auto de fecha 3-10-2019, dictado en las Diligencias Previas nº 38/17 del nombrado Juzgado Central de Instrucción nº 3, la Magistrada titular acordó que aceptaba la competencia para proseguir las labores investigadoras de la supuesta red dedicada a la obtención de dinero de proveedores mediante sobornos y otras prácticas corruptas, que luego era aflorado en el



**ADMINISTRACION
DE JUSTICIA**

mercado lícito, en cuya estructura presuntamente está integrado el reclamado.

Dichas Diligencias Previas n° 38/17 se habían incoado en mayo de 2017 en virtud de querella formulada por Petróleos de Venezuela S.A. (PDVSA) el 3-5-2017 y admitida por auto de 8-6-2017, inhibiéndose el Juzgado Central de Instrucción n° 3 en favor de los Juzgados de Instrucción de Madrid, siendo repartida la causa al Juzgado de Instrucción n° 41 de la mencionada capital, que tenía incoadas sobre los mismos hechos las Diligencias Previas n° 1545/2017 (a las que luego se acumularon las Diligencias Previas n° 839/2018 del Juzgado de Instrucción n° 27 de Madrid), en virtud de denuncia interpuesta por la Fiscalía contra la Corrupción y la Criminalidad Organizada. Debido a la ampliación de los hechos sujetos a comprobación, como fruto de las diligencias que se practicaron, el nombrado Juzgado de Instrucción n° 41 acordó el 21-6-2019 su inhibición y devolución al Juzgado Central de Instrucción n° 3.

Como recuerda la Sección 2ª de esta Sala de lo Penal, aquellas Diligencias Previas fueron abiertas en virtud de denuncia de la Fiscalía Especial contra la Corrupción y la Criminalidad Organizada, como consecuencia de la información contenida en la Comisión Rogatoria Internacional librada por las autoridades judiciales portuguesas y remitidas a Fiscalía, a las que se unió posteriormente la querella criminal formulada por la empresa pública venezolana Petróleos de Venezuela S.A. (PDVSA), contra diversas personas dirigentes de dicha sociedad y sus filiales, entre ellas el aquí reclamado, que era presidente de Bariven S.A., una de tales filiales, a quien se le atribuía la presunta comisión de los delitos de integración en organización criminal, corrupción y defraudación, cometidos en Venezuela y otros países (entre ellos España y Estados Unidos de América), nombrándose como miembros responsables de la ilegal estructura criminal a los implicados con apellidos Rincón y Shiera, quienes estaban siendo investigados en un procedimiento incoado en 2015 por el Juzgado del Distrito Sur de Texas, por su participación en varios delitos, entre ellos el de lavado de dinero ilícito, siendo los beneficios de tal organización criminal blanqueados en Estados Unidos de América, España,

11



ADMINISTRACION
DE JUSTICIA

Reino Unido, Suiza, Malta, Isla Mauricio y Belice, mediante la compra de inmuebles y la creación de sociedades interpuestas.

Pone de relieve la Sección 2ª de esta Sala en el auto recurrido que el auto de inhibición del Juzgado de Instrucción nº 41 de Madrid, dictado el 21-6-2019, hacía referencia a que la investigación desplegada en España abarca a imputados españoles, como es el caso del ahora reclamado, como vínculo de relación de la investigación con la jurisdicción española, aparte de que los hechos se han cometido parcialmente en el extranjero. Razón última por la que devolvió la competencia para su comprobación al Juzgado Central de Instrucción nº 3, por si los hechos pudieran constituir los delitos de organización criminal, blanqueo de capitales y corrupción en negocios jurídicos internacionales.

No podemos compartir la tesis de la parte recurrente sobre mejor posicionamiento del Estado requirente para conocer los hechos investigados en él y en España, puesto que un examen de la relación fáctica contenida en la documentación enviada desde Estados Unidos de América (especialmente la acusación formal de reemplazo y la declaración jurada del agente especial Wood: folios 245 a 320 y 332 a 347, respectivamente) y de los hechos que se investigan en España (contenidos en la querella formulada el 3-5-2017 y el auto de inhibición dictado el 21-6-2019 por el Juzgado de Instrucción nº 41 de Madrid: obrantes, respectivamente, en sendas piezas separadas documentales que se integran en las actuaciones), nos lleva a estar en presencia, básicamente, en una misma dinámica delictiva sujeta a comprobación en uno y otro Estado, sin poder dar preferencia a uno sobre el otro. Si bien el procedimiento norteamericano comenzó a tramitarse antes que el español, versa en esencia sobre hechos, si no idénticos, sí similares, consistentes en la existencia y desarticulación de una operativa organizada para obtener de la mercantil PDVSA y sus filiales dinero por vías ilegales a través de sobornos, licitaciones y adjudicaciones amañadas, así como pagos preferenciales, cuyos productos dinerarios eran aflorados en el mercado lícito a través de compras de inmuebles e inversiones financieras o societarias en varios países. En uno y



**ADMINISTRACION DE JUSTICIA**

en otro Estado aparecen implicados los mismos investigados -entre los que figura el reclamado-; y en ambos procedimientos se alude a las declaraciones auto y heteroinculpatorias de varios imputados, incidiendo especialmente en los apellidados Rincón y Shiera, que están prestando colaboración con las autoridades estadounidenses.

La tesis, mantenida por el Ministerio Fiscal, de fragmentación de los procedimientos, al conocer el norteamericano sobre las prácticas corruptas y el español sobre el lavado de capitales, es una interpretación simplista de la realidad de ambos procedimientos, que conocen de toda la dinámica delictiva, de cuya extensión en nuestro país es buena muestra el acopio de densos informes policiales de la Unidad Central de Delincuencia Económica y Fiscal (UDEF) existentes, en la llamada "Operación Maraca" que van acumulando nuevos indicios desde que el 26-12-2017 comenzó a actuar; diligencias practicadas de las que son ejemplos los anexos que aparecen en el pendrive del sobre que figura como documento n° 15 unido al folio 158 de rollo de Sala.

De ahí que no pueda compartirse la alegación del recurrente atinente a que el procedimiento norteamericano abarca más conductas supuestamente delictivas que el español, puesto que este último sigue desplegando diligencias de investigación. Ello trae como consecuencia que resulte inaplicable en este momento la posibilidad de entrega temporal del reclamado, prevista en el artículo 19.2 de la Ley de Extradición Pasiva, ya que en España sigue investigándosele.

Como tampoco podemos decantarnos por la opción de su entrega, prevista en el artículo IV del Texto Integrado, por su condición de ciudadano español que reiteramos está siendo investigado en España por hechos que guardan estrecha relación con los que son objeto de comprobación en Estados Unidos de América. Por lo que lo más factible es que la parte requirente haga uso de la posibilidad de someter el caso a las autoridades españolas para su enjuiciamiento, como prevé en su último inciso el precepto mencionado.



**ADMINISTRACION
DE JUSTICIA**

Por lo demás, no resulta aplicable el apartado A del artículo VIII del Texto Integrado de las disposiciones del Tratado bilateral de Extradición y del Tratado de Extradición UE-EEUU, en virtud del cual *"Si se concede la extradición de una persona contra la cual se sigue proceso o que está cumpliendo condena en el Estado requerido, dicho Estado podrá entregar temporalmente a dicha persona a la Parte requirente para su enjuiciamiento. La persona que haya sido así entregada será mantenida bajo custodia en el Estado requirente, debiendo ser devuelta al Estado requerido después de terminar el proceso contra dicha persona a tenor de las condiciones que se determinen por acuerdo entre las Partes Contratantes".* Puesto que está concebido para supuestos distintos al que nos ocupa, relativos a enjuiciamiento del reclamado por hechos diferentes a los que le implican en el Estado requerido.


Por ello, tampoco podrá acogerse el segundo motivo del recurso de súplica interpuesto.


**C)** Y respecto a la alegada indebida extensión de la jurisdicción del Estado requerido para conocer y enjuiciar los hechos que atribuye al reclamado, con retención de la competencia para investigar al Sr. **Ochoa Alvarado**, igualmente ha de ser rechazado este tercer motivo de recurso.


De forma clara y detallada, el auto recurrido se pronuncia sobre la materia al expresar, que *"tanto en EEUU como en España, como probablemente en otros países, se está llevando una investigación sobre, si no exactamente los mismos hechos, sí sobre aspectos parciales de una misma situación, pero que tienen indudables elementos comunes".* Sigue expresando la resolución impugnada que se constata *"la existencia de investigaciones al menos parcialmente coincidentes, existiendo a lo sumo una situación de litispendencia in abstracto, en cuanto que el enjuiciamiento por determinados cargos que se pretende efectuar respecto al Sr. Alvarado Ochoa en EEUU se refieren a la misma*

14



**ADMINISTRACION
DE JUSTICIA**

*tipología delictiva a la que se investiga en España, pero pudiendo no ser plenamente coincidente, en relación con algunos de los hechos concretos investigados en uno y otro país"*. Por ello, la Sección 2ª considera que *"no puede afirmarse que exista litispendencia in concreto"*, a la que se refiere el artículo V.A.1 del Texto Integrado, por *"cuanto exigiría que los dos procesos tuvieran idéntico objeto, circunstancia que en el presente caso no podemos dar por acreditada"*. Por lo que concluye que se produce *"una situación de doble competencia jurisdiccional concurrente: la que viene ejerciendo el Estado demandante en virtud de su derecho interno en relación con hechos cuya producción se inicia en EEUU, pero que se desenvuelven al menos parcialmente en el extranjero, y la que se viene ejerciendo en España, existiendo específicos hechos que se producen en nuestro país, que determina la competencia de los tribunales españoles en atención al principio de territorialidad, como igualmente por existir encausados españoles que la atribuye en razón del principio de personalidad activa, aun cuando sean hechos producidos en el extranjero; aunque desconocemos si la investigación española abarca también la totalidad de los específicos hechos que pretenden ser objeto de enjuiciamiento en EEUU"*.

Para el Tribunal que dictó la resolución recurrida, la única forma clara de resolver la cuestión planteada proviene del juego del principio "non bis in ídem", concluyendo que, aunque resulte cierto que la causa que se sigue ante el Juzgado del Distrito Sur de Texas fue incoada en 2015, o sea, antes que la española, y que respecto al aquí reclamado se halle más avanzada que el procedimiento español, pues existe ya acusación formal y han declarado varios partícipes culpables de varios actos con apariencia delictiva, no corresponde a dicho Tribunal de extradición *"pronunciarse en favor de una u otra jurisdicción, ni favorecer u obstaculizar a ninguna de ellas"*. Por eso, argumenta que la aludida existencia de litispendencia in abstracto apreciada, lleva a ponderar la cláusula facultativa de entrega de nacionales, en el sentido de que *"la existencia del proceso en España sobre, en general, los mismos hechos o delitos, justifica la no precedencia de la extradición por razón de la nacionalidad española; dando por esta vía indirecta prevalencia a nuestra jurisdicción, con reconocimiento al reclamado, ciudadano español residente en España, el derecho a obtener la tutela judicial efectiva de los*



ADMINISTRACION
DE JUSTICIA

*tribunales españoles, para que los hechos puedan ser investigados, incluso los que son objeto de persecución en EEUU, por los tribunales españoles, pudiendo ejercer eficazmente su derecho de defensa, lo que no se ha producido en la investigación llevada a cabo en EEUU, en cuya investigación no ha intervenido en ningún momento el reclamado".*

Consideraciones las anteriores que ratificamos, siendo así que la justicia norteamericana está perfectamente legitimada para emprender una persecución penal sobre los hechos contenidos en la demanda extradicional, independientemente que también pudiera hacerlo alguna otra jurisdicción, como la española, habida cuenta de que parte de las transacciones realizadas para perfeccionar el lavado de capitales obtenidos de los ilegales negocios de soborno y corrupción al parecer se han efectuado en España, no habiéndose constatado la existencia de alguna jurisdicción preferente sobre el caso, ni constando que exista en el procedimiento tramitado ante la justicia española alguna petición de cesión de jurisdicción ni pretensión del Ministerio Fiscal y las partes acusadoras en dicho sentido que pudiera posibilitar la investigación y el enjuiciamiento único en el Estado requirente.

En definitiva, se alega por el Ministerio Fiscal que no concurre como causa de denegación de la entrega del reclamado, la prevista en el artículo V letra A n° 1 del Texto Integrado y en el artículo 4.5° de la Ley de Extradición Pasiva, pues la existencia de un procedimiento penal abierto en España por la presunta comisión de hechos constitutivos de delitos de similar tipología a los investigados en Estados Unidos de América, no constituye óbice para la materialización de dicha entrega. El primero de los preceptos nombrados establece que no se concederá la extradición *"cuando la persona reclamada sea objeto de un proceso o haya sido ya juzgada y absuelta o condenada en el territorio de la parte requerida por el delito por el cual se pide la extradición"*. El segundo precepto añade que *"Podrá, no obstante, accederse a la extradición cuando se hubiere decidido no entablar persecución o poner fin al procedimiento pendiente por los referidos hechos y no haya tenido lugar por sobreseimiento libre o por cualquier otra resolución que deba producir el efecto*



**ADMINISTRACION DE JUSTICIA**

*de cosa juzgada"*. Precisamente esta circunstancia procesal no acaece en el caso sometido a examen, puesto que el Ministerio Fiscal no ha expresado que pedirá el sobreseimiento y archivo de la causa española una vez que el reclamado fuera entregado a Estados Unidos y se compruebe que allí prosiguen las diligencias contra el nombrado acusado.

Como ya hemos adelantado, en las actuaciones remitidas consta que contra el reclamado se siguen actuaciones penales en el Juzgado Central de Instrucción nº 3 a través de las Diligencias Previas nº 38/2017, donde figura como investigado por su presunta participación en hechos que pudieran constituir los delitos de pertenencia a una organización criminal, corrupción en los negocios y blanqueo de capitales, a cuyo tipo le afecta la extensión jurisdiccional del artículo 301.4 del Código Penal español, que establece que *"El culpable será igualmente castigado aunque el delito del que provienen los bienes, a los actos penados en los apartados anteriores, hubiesen sido cometidos, total o parcialmente, en el extranjero"*.

Para el Tribunal que dictó la resolución recurrida y para la defensa del reclamado, este procedimiento abierto en España constituye un obstáculo legal insalvable para la extradición del Sr. **Ochoa Alvarado**, siendo lo más correcto desde el punto de vista procesal y adecuado desde la perspectiva de los derechos del interesado, por la similitud de hechos con apariencia delictiva presuntamente perpetrados y la nacionalidad española del afectado, que tales hechos sigan investigándose y, en su caso, se juzguen en España, por la mejor posición objetiva y subjetiva del órgano judicial sentenciador para adoptar su convicción.

Al respecto, con rechazo a este tercer motivo de recurso, debemos establecer que esta causa de oposición a la entrega debe prosperar, ya que reiteramos que los hechos investigados en nuestro país coinciden casi en su totalidad con los que son objeto de comprobación en el Estado reclamante, no pudiendo este Tribunal fragmentar en segmentos fácticos los hechos a conocer por los órganos jurisdiccionales del Estado requirente

17



ADMINISTRACION
DE JUSTICIA

y del Estado requerido, pues no es su función y enturbiaría el devenir procesal en uno y otro país.

Todo ello sin perjuicio del legítimo derecho de las autoridades del Estado reclamante a reproducir, total o parcialmente, sus pedimentos, en el supuesto de que todos o algunos de los hechos que atribuye al reclamado queden imprejuzgados en España. Cláusula que será recogida en la parte dispositiva de esta resolución.

**TERCERO.-** En consecuencia, al no poderse acoger ninguno de los motivos de recurso mantenidos, procede desestimar el recurso de súplica formulado.

Sin embargo, no debemos acabar el análisis del recurso planteado sin hacer referencia a la circunstancia, suscitada al final del auto impugnado, atinente a la posible desproporcionalidad de las penas aplicables, según se trate de una u otra legislación (norteamericana o española).

El auto de 16-12-2019 hace referencia a la gran disparidad de tratamiento punitivo en uno y otro sistema penal, al ser ostensiblemente más alta (hasta 20 años de prisión) las penas posibles de imponer en el Estado reclamante, en tanto que la pena a imponer en España sería mucho menos elevada (hasta 9 años de prisión, si contemplamos el hecho organizativo: artículo 302.1 del nuestro Código Penal).

Pero tal cuestión resulta, a estos efectos, baladí, por cuanto la constante doctrina de esta Sala, en supuestos semejantes de relativa desproporción punitiva, valora primordialmente que los hechos constituyan delito en una y otra legislación en liza y que en ambas se establezca una pena mínima de un año de prisión, siendo indiferente a los principios de doble incriminación y del mínimo punitivo la distinta penalidad, salvo que, lo que no es el caso, la pena



**ADMINISTRACION**
**DE JUSTICIA**

prevista fuera inhumana o degradante, contraviniendo los principios establecidos en los artículos 15 y 25 de la Constitución. Así lo recoge recientemente la fundamentación jurídica 3ª de nuestro auto nº 81/2019, de 22 de noviembre, dictado en el recurso de súplica nº 76/19.

En atención a lo expuesto,

**PARTE  DISPOSITIVA**

**LA SALA ACUERDA:** Que **desestimamos** el **recurso de súplica** interpuesto por el **Ministerio Fiscal** contra el auto nº 42/19, de improcedencia de la extradición a Estados Unidos de América del reclamado **Javier Ochoa Alvarado**, dictado en el rollo de extradición nº 38/19 el día 16 de diciembre de 2019 por la Sección 2ª de esta Sala de lo Penal de la Audiencia Nacional, cuyo contenido mantenemos en su integridad.

Todo ello sin perjuicio del legítimo derecho de las autoridades del Estado reclamante a reproducir, total o parcialmente, sus pedimentos, en el supuesto de que todos o algunos de los hechos que atribuye al reclamado queden imprejuzgados en España.

Notifíquese esta resolución a las partes, haciéndoles saber que contra la misma no cabe interponer recurso ordinario alguno.

Así por este auto, lo pronuncian, mandan y firman los miembros del Tribunal arriba mencionados.

19



AUDIENCIA NACIONAL
PLENO
SALA DE LO PENAL

ADMINISTRACION
DE JUSTICIA

VOTO PARTICULAR QUE FORMULA LA ILMA. SRA.
PRESIDENTA Dª CONCEPCIÓN ESPEJEL JORQUERA Y AL
QUE SE ADHIEREN LOS ILMOS. SRES MAGISTRADOS D.
JOSÉ A. MORA ALARCÓN, Dª CAROLINA RIUS ALARCÓ y
DÑA. TERESA PALACIOS CRIADO RESPECTO DEL AUTO DEL
PLENO DE LA SALA DE LO PENAL DE FECHA 11 FEBRERO
DE 2020 EN ROLLO DE RECURSO DE SÚPLICA 9/2020
ROLLO DE EXTRADICIÓN 38/2019 DE LA SECCIÓN
SEGUNDA EN EL QUE SE CONFIRMA LA DENEGACIÓN DE LA
ENTREGA DE JAVIER OCHOA ALVARADO, NACIONAL
VENEZOLANO Y ESPAÑOL RECLAMADO BAJO LA IDENTIDAD
DE JAVIER ALVARADO OCHOA POR LAS AUTORIDADES
JUDICIALES DE LOS EEUU DE AMERICA.

PRIMERO.- Si bien podemos compartir la conclusión de
que los indicios que se ponen de relieve en el escrito
de recurso del Ministerio Fiscal no bastan para
declarar plenamente probada la adquisición
fraudulenta de la nacionalidad española por parte del
reclamado, consideramos que los referidos datos,
unidos a las restantes circunstancias concurrentes,
debieron comportar la improcedencia de hacer uso de
la facultad de denegación de la entrega con base en
la nacionalidad.

A este respecto el artículo IV del Instrumento
Previsto en el artículo 3(2) del Acuerdo de Extradición
entre la Unión Europea y los Estados Unidos de América
de 25 de junio de 2003 para la aplicación del Tratado
de Extradición entre España y los Estados Unidos de
América de 29 de mayo de 1970 y Tratados Suplementarios
de Extradición de 25 de enero de 1975, 9 de febrero de
1988 y 12 de marzo de 1996, publicado en el Boletín
Oficial del Estado nº 22 de 22 de enero de 2010, en
vigor desde el 1 de febrero de 2010, establece que "
Ninguna de las Partes Contratantes tendrá la obligación
de entregar a sus propios nacionales, pero la autoridad
competente de España o el Poder Ejecutivo de los
Estados Unidos tendrá la facultad de entregarlos si, a
su juicio, lo considera procedente y siempre que no lo
prohíba su propia legislación interna. Si la



**ADMINISTRACION
DE JUSTICIA**

extradición fuera rehusada exclusivamente por causa de nacionalidad, la Parte Requerida deberá, si lo solicitare la Parte Requirente, someter el caso a sus autoridades para su enjuiciamiento."

En el Tratado Bilateral, de aplicación preferente a la Ley de Extradición pasiva, se contempla, pues, la mencionada posibilidad como meramente facultativa y esta Sala, a la hora de decidir sobre si procede o no hacer uso de dicha facultad, ha venido teniendo en consideración diversos factores, de un lado, los relativos a las circunstancias personales del reclamado, a saber, los que permitan inferir el grado de vinculación efectiva con nuestro país, en casos de doble nacionalidad, como la fecha y modo de adquisición de la nacionalidad española, tiempo de residencia efectivo, arraigo y antigüedad del mismo, mantenimiento o renuncia a la nacionalidad de origen, estado de salud o circunstancias personales o familiares susceptibles de especial consideración. De otro lado, hemos atendido a la gravedad y naturaleza de los hechos objeto de reclamación, a la existencia de organización criminal, número de acusados que ya han sido enjuiciados o están pendientes de enjuiciamiento ante el Tribunal reclamante, el estadio de la causa y la disponibilidad de los medios probatorios, factores que incidirán en la dificultad, imposibilidad y eficacia del enjuiciamiento en España, en la posibilidad de que la celebración del juicio por separado para los diversos integrantes de la trama pueda comportar la división de la continencia de la causa y en la necesidad de evitar márgenes de impunidad.

Considerando la totalidad de dichos parámetros, estimamos que no debería hacerse uso de causa facultativa de denegación de entrega con base en la nacionalidad española recientemente adquirida.

Los propios datos recogidos en el auto del que respetuosamente discrepamos evidencian que la nacionalidad fue solicitada en fecha muy próxima a la salida del reclamado de su país de origen y cuya nacionalidad mantiene, Venezuela, y poco después de incoarse en dicho país y en EEUU, Estado reclamante, sendas causas por delitos graves cuya dificultad de enjuiciamiento eficaz en el extranjero parece obvia, como más adelante se expondrá.

En efecto, la nacionalidad fue solicitada el 22-7-2014, mismo año en que le fue concedida la residencia

21



ADMINISTRACION
DE JUSTICIA

legal en nuestro país, siéndole otorgada la
nacionalidad el 5-12-2017 y prestando juramento o
promesa el 15-1-2019.

Como consta en el auto del Pleno, a la solicitud
se acompañaron escrituras de propiedad de tres
inmuebles (vivienda, trastero y plaza de garaje),
adquiridos en Madrid el 10-1-2006, documentación
bancaria con diversos pagos y suministros, que datan
del 2012 en adelante, y tributaria, esta última
referida al Impuesto sobre la Renta de Personas Físicas
del ejercicio 2012; empadronamiento en Madrid desde el
29-5-2013; habiéndose jubilado en la empresa PDVSA el
1-10-2013; datando su inscripción como residente en
España en el Registro del Consulado General de
Venezuela de Madrid desde el 6-6-2014.

De ello colegimos que, al margen de la adquisición
de una vivienda, garaje y trastero en España en el año
2006 y algunos pagos aislados, el empadronamiento se
produjo en 2013 meses antes de la fecha de cese por
jubilación en la empresa referenciada; inscribiéndose
como residente en España en el Registro del Consulado
un año después de la fecha de empadronamiento.

De modo que, aunque se estimara que el
empadronamiento evidenciara una residencia efectiva y
prolongada en nuestro país (lo que es muy discutible)
esta no se remontaría más allá de las fechas indicadas
y se habría iniciado después de la comisión de los
hechos delictivos por los que se reclama EEUU e incluso
a raíz de la incoación de los procesos seguidos contra
el mismo en dicho país y en Venezuela, cuya
nacionalidad mantiene y cuya Constitución impide la
entrega de sus nacionales, lo que obstaría a la
prosperabilidad de la reclamación por dicho Estado,
por aplicación del principio de reciprocidad jurídica.

En todo caso, aun cuando se concluya que no
existirían datos para declarar la adquisición
fraudulenta de la nacionalidad, la referida doble
nacionalidad y la vinculación efectiva con España, que
únicamente tendrían la antigüedad y naturaleza
mencionadas, no deberían bastar, a nuestro juicio,
para la denegación de la entrega, atendidos la gravedad
y complejidad de los hechos por los que se reclama al
extradendus, el relato en la documentación
extradicional de la existencia de una trama criminal
que desplegó de forma prolongada en el tiempo sus
actividades delictivas en EEUU, de la en el Acta de
Acusación del Gran Jurado se imputa al reclamado formar



**ADMINISTRACION DE JUSTICIA**

parte y una actuación conjunta atribuida a un gran número de acusados con reparto de papeles entre los miembros, la existencia de integrantes ya sentenciados y otros pendientes de juicio en EEUU, circunstancias que podrían comportar ruptura de la continencia de la causa seguida en dicho país, en el que radican, además, los medios probatorios de las conductas perpetradas en su territorio y . de los perjuicios irrogados.

Por otro lado, hemos de poner de manifiesto que la insuficiencia de la nacionalidad española para hacer uso de la facultad de denegación de la entrega se infiere de los razonamientos de la propia resolución recurrida en súplica, en los que se complementa la nacionalidad con la existencia de un procedimiento pendiente en España e incluso con una alusión a la desproporcionalidad de la pena imponible en el Estado requirente y en el requerido, argumento este último que el propio auto de Pleno descarta en su Fundamento Tercero, que compartimos en su integridad, en el que se aclara que la diferencia penológica no afecta a los principios de doble incriminación y mínimo punitivo y no puede obstar a la entrega, salvo que la pena prevista fuera inhumana o degradante y contraviniera los principios establecidos en los artículos 15 y 25 de la Constitución Española; citando al efecto el criterio mantenido en reiteradas resoluciones de esta propia Sala y en concreto el reciente auto 81/2019 de 22 noviembre.

**SEGUNDO.-** Sentado que, a nuestro criterio, ni la nacionalidad española, recientemente adquirida en las circunstancias precedentemente expuestas, ni menos aún la pretendida desproporcionalidad punitiva podrían servir de base para la denegación de la entrega, la cuestión a dilucidar sería si la existencia del procedimiento pendiente en España frente a un nacional venezolano, recientemente nacionalizado español, justificaría, atendida la totalidad de circunstancias concurrentes, la denegación de la entrega, cuestión que, estimamos, debió de merecer una respuesta negativa, dado que los hechos que dan lugar a la reclamación guardarían cierta conexidad con los investigados en España pero no son idénticos. De modo que debió accederse a la extradición y, en el supuesto de que finalmente llegaran a investigarse o formularse acusación por los enjuiciados en EEUU, tener en consideración la sentencia dictada en dicho país, aplicando el principio de non bis in ídem, solución que se plantea el propio auto impugnado.



**ADMINISTRACION
DE JUSTICIA**

En efecto, en la resolución del Pleno de la que respetuosamente disentimos se acogen los argumentos contenidos al respecto en el auto recurrido en súplica, en el que se alude a lo que se viene a denominar como "litispendencia in abstracto", admitiendo que los hechos investigados en EEUU y en España y probablemente en otros países, no son exactamente los mismos sino que se consideran aspectos parciales de una misma situación, con lo que se estima "indudables elementos comunes". Sigue expresando la resolución impugnada que se constata que el enjuiciamiento por determinados cargos que se pretende efectuar respecto al Sr. Alvarado Ochoa en EEUU se refieren "a la misma tipología delictiva a la que se investiga en España"; admitiendo seguidamente de nuevo que los hechos investigados en uno y otro país pueden no ser plenamente coincidentes. Por eso se concluye que "no puede afirmarse que exista litispendencia in concreto", a la que se refiere el artículo V.A.1 del Texto Integrado, por "cuanto exigiría que los dos procesos tuvieran idéntico objeto, circunstancia que en el presente caso no podemos dar por acreditada".

Admite la propia resolución que lo que se produce es "una situación de doble competencia jurisdiccional concurrente: la que viene ejerciendo el Estado demandante en virtud de su derecho interno en relación con hechos cuya producción se inicia en EEUU, pero que se desenvuelven al menos parcialmente en el extranjero, y la que se viene ejerciendo en España, existiendo específicos hechos que se producen en nuestro país, que determina la competencia de los tribunales españoles en atención al principio de territorialidad, como igualmente por existir encausados españoles que la atribuye en razón del principio de personalidad activa, aun cuando sean hechos producidos en el extranjero; aunque desconocemos si la investigación española abarca también la totalidad de los específicos hechos que pretenden ser objeto de enjuiciamiento en EEUU".

Se reproduce igualmente en el auto de Pleno el argumento de la resolución recurrida relativo a que la única forma clara de resolver la cuestión planteada proviene del juego del principio "non bis in ídem".

Es decir, que del propio auto impugnado cuyos argumentos hace suyos el Pleno se infiere con rotundidad que no existe una litispendencia que permita la aplicación del artículo V.A.1 del Texto Integrado y que nos encontraríamos ante un supuesto de jurisdicción



ADMINISTRACION
DE JUSTICIA

compartida para el enjuiciamiento de lo que, a lo sumo, serían hechos conexos, pero no idénticos.

Razona incluso el auto confirmado que "no corresponde al Tribunal de extradición pronunciarse en favor de una u otra jurisdicción, ni favorecer u obstaculizar a ninguna de ellas".

Sin embargo, tras incluir razonamientos que hasta ese punto podríamos compartir, al auto recurrido a partir de dicho momento efectúa un giro argumentativo que lleva a la obstaculización del proceso seguido en EEUU en favor de la Jurisdicción española en un supuesto en el que no existe litispendencia y que debería haberse resuelto por la vía del principio de non bis in ídem respecto de los hechos que, en su caso, fueran objeto de condena en el Estado reclamante, el cual se encuentra en mejores condiciones para enjuiciar los ilícitos perpetrados en su territorio, presuntamente cometidos por una trama criminal organizada, en la que hay partícipes ya condenados y otros pendientes de enjuiciamiento, respecto de algunos de los cuales consta en la documentación remitida a la Sección Segunda que se ha formulado otra reclamación extradicional; estando las investigaciones mucho más avanzadas en el Estado requirente, como se admite en el propio auto recurrido, dado que la causa que se sigue ante el Juzgado del Distrito Sur de Texas fue incoada en 2015, existiendo ya acusación formal del Gran Jurado.

No podemos compartir tampoco el argumento adicional de que el enjuiciamiento en España de hechos cometidos y perseguidos en EEUU vaya a permitir al reclamado que pueda ejercer eficazmente su derecho de defensa, lo que, se dice, "no se ha producido en la investigación llevada a cabo en EEUU, en cuya investigación no ha intervenido en ningún momento el reclamado", ya que, al margen de que dicha afirmación no queda debidamente acreditada, en cualquier caso, no cabe olvidar, que la extradición se plantea precisamente por haberse puesto voluntariamente el reclamado fuera de la disposición del Tribunal del Estado reclamante; no existiendo motivo alguno para aventurar que, una vez producida la entrega, no fuera a garantizarse por el Órgano competente el ejercicio del derecho de defensa.

A nuestro juicio, debió tenerse en consideración que los hechos por los que se formula la reclamación extradicional se remontan al período comprendido entre principios de 2011 y finales de 2013, es decir, son



ADMINISTRACION DE JUSTICIA

muy anteriores a los que han sido investigados en España; habiéndose centrado las diligencias practicadas en nuestro país en el blanqueo de capitales presuntamente procedentes de actividades ilegales, algunas de las cuales podrían resultar parcialmente coincidentes con las investigadas en Estados Unidos, en relación con las cuales no consta en las actuaciones cuyos testimonios fueron remitidos a la Sección Segunda que se haya realizado investigación alguna, al margen de las solicitudes de cooperación internacional para acreditar la efectividad de la pendencia del proceso seguido en Estados Unidos, según se infiere de los términos de las resoluciones dictadas por el JCI 3, con la finalidad de evidenciar la existencia del delito antecedente necesario para la tipificación del blanqueo investigado.

Es cierto que se presentó y admitió a trámite una querella presentada por la compañía venezolana PETRÓLEOS DE VENEZUELA SA, con sello de entrada en el SCRRDA de la Audiencia Nacional de 5 mayo 2017, en la que se relataba la existencia de una organización/grupo criminal, uno de cuyos responsables máximos sería el ahora reclamado; describiendo una dinámica comisiva de cobro de sobornos semejante a la que se detalla en la documentación extradicional, pero no lo es menos que, en la propia querella, se ponía de manifiesto que estos hechos estaban siendo investigados por el Juzgado de Distrito del Distrito Sur de Texas división de Houston; haciendo constar incluso que respecto de varios de los querellados ya se había formulado Acusación por el Gran Jurado y que varios acusados se habían declarado confesos.

En la querella, en su apartado 57, se concretó que en dicho procedimiento seguido en EEUU quedó acreditada la actividad previa delictiva precedente al blanqueo; describiéndose, a continuación, las operaciones encaminadas al blanqueo en España del producto ilícitamente obtenido de las actividades delictivas previas perseguidas en Estados Unidos. Se aportó junto con la querella, entre otros documentos, el Acta de Acusación del Gran Jurado respecto de alguno de los querellados.

También en los informes realizados por la UDEF se parte de la existencia de los procedimientos seguidos en Estados Unidos e incluso en Portugal y las investigaciones se centran en la determinación de los movimientos de capitales y adquisiciones de bienes que pudieran proceder de las actividades ilegales

ADMINISTRACION
DE JUSTICIA

desplegadas e investigadas en el extranjero, investigaciones patrimoniales que son posteriores al período en el que se desplegaron las actuaciones por las que se formula acusación en la documentación extradicional.

De otro lado, en el auto de fecha 16 marzo 2018 del Juzgado Central de Instrucción número 3 consta que en la causa se estaba investigando un presunto delito de blanqueo de capitales con motivo de la querella interpuesta por PETRÓLEOS DEL VENEZUELA SA; siendo para la averiguación de la información que pudiera contribuir al esclarecimiento de dicho delito de blanqueo de capitales para lo que se acordó dirigir mandamiento a la AGENCIA ESTATAL DE ADMINISTRACIÓN TRIBUTARIA y a la TESORERÍA GENERAL DE LA SEGURIDAD SOCIAL para la obtención de pruebas.

Con posterioridad, en el auto de 23 marzo 2018, en el que se desestimó la reforma interpuesta por el Ministerio Fiscal frente al auto en el que se acordó la inhibición a favor del Juzgado de Instrucción de Madrid al que por turno correspondiera, se expuso que, por los delitos cometidos en el extranjero se siguen procedimientos desde el año 2015 en el Juzgado de Distrito del Distrito Sur de Texas división de Houston y que el único delito por el que se sigue el procedimiento incoado a raíz de la querella mencionada es el de blanqueo de capitales; concluyendo que todos los actos de blanqueo se habían cometido la provincia de Madrid. Se razona, seguidamente, de nuevo que los demás delitos expresados en la querella no son objeto de investigación en la causa y que los de organización criminal, corrupción en los negocios, corrupción en las transacciones económicas internacionales y administración desleal son objeto de investigación en otros países y que constituirían los delitos precedentes del delito de blanqueo de capitales; reiterando que son objeto de investigación en Estados Unidos.

A su vez, en el auto dictado por el Juzgado de Instrucción número 41 de Madrid, en el que se acordó la inhibición a favor de la Audiencia Nacional, aunque se explicitan la totalidad de las diligencias acumuladas en las Diligencias Previas seguidas ante dicho órgano, enumerando al efecto las repartidas al mencionado Juzgado en virtud de la denuncia formulada por la Fiscalía Anticorrupción de la Audiencia Nacional relativa a Nervis Villalobos a partir de los datos suministrados por las autoridades portuguesas, las Diligencias Previas seguidas ante el Juzgado de



**ADMINISTRACION DE JUSTICIA**

Instrucción número 27 de Madrid que recibió las actuaciones inhibidas del JCI 3 dimanantes de una querella presentada por PDEVESA y, en párrafo separado, se menciona una querella presentada en la Audiencia Nacional contra diversas personas por delitos de organización criminal para la comisión de actos de corrupción y defraudación realizados en Venezuela y en otros países que seguidamente se detallan, reconoce que de la misma el JCI se inhibió a favor de los Juzgados de Madrid; siendo el auto de inhibición el anteriormente mencionado en las DP 38/2017, en el que el JCI 3 especificó, como se ha dicho, que el único delito investigado en dichas actuaciones era el blanqueo de capitales, por cuanto los delitos precedentes se estaban investigando en Estados Unidos.

En el auto de inhibición del Juzgado 41 de Madrid se fundamenta la decisión en la aportación de nueva documentación en abril de 2018, en la que se constatan nuevas operaciones de blanqueo, la investigación de una nueva operativa de blanqueo de carácter internacional para aflorar capital procedente de delitos cometidos en Venezuela; relatando otros actos de blanqueo investigados en Estados Unidos y Suiza, para concluir la existencia de una estructura internacional dedicado al blanqueo de capitales, la adquisición de inmuebles en diversas provincias españolas y los movimientos de fondos procedentes del extranjero; haciendo referencia a que el delito subyacente está siendo investigado respecto de Villalobos en Estados Unidos también por blanqueo de capitales; habiéndose solicitado su extradición por dicho país, en base a todo ello, sostiene la competencia de la Audiencia Nacional para el enjuiciamiento del blanqueo de capitales.

Respecto de las actuaciones posteriores llevadas a cabo en el JCI 3 en DP 38/2017, es de indicar que, aunque en el auto de fecha 5 noviembre 2019 en el que se desestima el recurso de reforma interpuesto por la representación de uno de los imputados frente a la auto del 3 octubre 2019, en el que se acordó aceptar la competencia para el conocimiento de las DP 1545/17 del Juzgado de Instrucción 41 de Madrid, se dice que "el presente procedimiento se sigue por delitos de blanqueo de capitales cometido en parte en territorio español imparten el extranjero, organización criminal para la comisión de actos de corrupción interna realizados en Venezuela y en otros países"; aludiéndose a continuación a la existencia de una

28



**ADMINISTRACION
DE JUSTICIA**

organización que diseñó un minucioso plan de distribución de funciones entre sus miembros, al amaño y distorsión de los procesos de licitación en beneficio de los miembros de la organización criminal y en perjuicio de una compañía filial de PDVSA, al pago de sobornos disfrazados de comisiones y a la integración en la organización entre otros del ahora reclamado, no es menos cierto que no se detallan en la resolución los hechos investigados en relación con los presuntos delitos antecedentes, que se dice fueron cometidos en Venezuela y otros lugares. De otro lado, se hace mención a la existencia de una investigación criminal desde el año 2015 en el Juzgado de Distrito Sur de Texas en Houston donde se investigan delitos de corrupción en los negocios, corrupción en las transacciones económicas internacionales, administración desleal, organización criminal, revelación de secretos, falsedad documental, estafa, delitos contra la Hacienda Pública y blanqueo de capitales. Igualmente se menciona que la existencia y funcionamiento de la organización criminal ha sido confirmada ante el referido Juzgado de Houston por varios empleados que se han declarado culpables de los delitos de blanqueo y conspiración; añadiendo que los beneficios obtenidos con la comisión de los delitos precedentes fueron blanqueados en parte en España.

De los documentos unidos al expediente procedentes del JCI 3 no cabe inferir con claridad los hechos que se dice son objeto del procedimiento, pero no cabe olvidar que el auto en el que se acepta la inhibición acordada por el Juzgado de Instrucción 41 de Madrid ha sido dictado en las diligencias previas 38/2017, es decir, en las mismas en las que el propio Juzgado había dictado el auto de inhibición precedentemente citado y otras resoluciones también mencionadas en las que claramente se especificaba que el objeto del procedimiento era el delito de blanqueo de capitales, atendido que en los restantes hechos expuestos en la querella presentada por PDVESA, relativos a los delitos antecedentes, estaban siendo investigados en Houston; habiendo sido dictado el nuevo auto de inhibición por el Juzgado 41 de Madrid en base a la producción de actos posteriores en el año 2018 de blanqueo de capitales cometidos en el extranjero.

En cualquier caso, no consta que durante la tramitación de las DP 38/2017 antes de la inhibición acordada por el JCI 3, por estimar que los actos de blanqueo (delito este que se señaló reiteradamente era el único objeto del procedimiento) se habían producido



**ADMINISTRACION
DE JUSTICIA**

en Madrid, ni desde que en octubre de 2019 se aceptó la inhibición acordada por el Juzgado 41 de Madrid, se haya realizado investigación alguna tendente a acreditar los delitos antecedentes que se estiman cometidos en el extranjero y, en concreto, en Estados Unidos, en relación con los cuales únicamente se interesaron actos de cooperación internacional para acreditar la existencia de los procedimientos seguidos en dicho Estado.

Reiteramos que los informes de la UDEF, a los que se alude en el auto del que discrepamos, aun cuando partan de delitos precedentes cometidos en el extranjero y de las acusaciones formuladas en EEUU, se centran en los movimientos patrimoniales de los capitales presuntamente blanqueados, no en la investigación de los delitos precedentes (algunos objeto de la presente reclamación y otros seguidos frente a otro acusado al que también se ha reclamado en otra demanda extradicional), ilícitos subyacentes que han dado lugar en dicho Estado a las correspondientes Actas de acusación del Gran Jurado.

En dichas circunstancias, no podemos compartir la conclusión de que los Estados Unidos no se encuentren en mejor posición para el enjuiciamiento de los delitos a los que se contrae la reclamación, respecto de los cuales no consta que se haya llevado a cabo investigación efectiva alguna en España, pues, reiteramos, las Diligencias se han centrado en la investigación de los actos de blanqueo de capitales presuntamente obtenidos de la actividad criminal investigaba en Estados Unidos y en otros países; radicando, respecto de las que son objeto de la reclamación, en el Estado reclamante los medios de prueba de los delitos cometidos en su territorio, en el que ya han sido juzgados o están pendientes de enjuiciamiento otros integrantes de la organización criminal, a los que, junto con el reclamado, se atribuye la ejecución del plan conjunto conocido por todos y al que cada uno contribuyó con conductas concretas, en virtud del reparto de tareas, conforme se señala en el propio auto recurrido en súplica; tratándose de una trama compleja y prolongada en el tiempo investigada en EEUU y que ya ha llegado a fase de formulación de cargos por el Gran Jurado, mientras que en España los delitos precedentes no han sido objeto de investigación efectiva alguna; no estando la mayoría de los intervinientes, los testigos, ni otros medios de prueba a disposición de la Jurisdicción española.



**ADMINISTRACION
DE JUSTICIA**

De los testimonios de los procedimientos seguidos en España no cabe inferir la identidad de los hechos objeto de investigación con los que han dado lugar a la reclamación extradicional, por lo que no cabe considerar la litispendencia como causa la denegación de la entrega; encontrándonos, como se admite en el propio auto recurrido, en un supuesto de Jurisdicción compartida; habiéndose pronunciado reiteradamente el Pleno de esta Sala, en diversos supuestos en que se perseguía a integrantes de organizaciones criminales, parte de cuyos miembros se encontraban en el Estado requirente, en el que igualmente radicaban los medios de prueba, tratándose de hechos complejos de difícil enjuiciamiento en España, en el sentido de no hacer uso de la facultad de denegación, pese a la nacionalidad española de los reclamados, incluso en casos en que algunos hechos fueron cometidos en territorio español para cuyo enjuiciamiento España también ostentaría jurisdicción.

**TERCERO.-** A título de ejemplo en Auto de Pleno 15 de enero de 2016, no hicimos uso de la potestad de no entrega del nacional, teniendo en cuenta como pautas de decisión que las pruebas se encontraban en el Estado de emisión, por lo que consideramos que su posición para enjuiciar era mejor; indicamos que debe atenderse a los fines de prevención general de la potestad punitiva que solo pueden desenvolverse en el lugar de ejecución del delito; razonamos que el enjuiciamiento en España resultaría únicamente factible en delitos de escasa complejidad; debiendo atender a la gravedad del delito, a los vínculos del reclamado con el Estado requirente, al conocimiento de la lengua -lo que influirá en su capacidad para ejercitar sus derechos procesales, en concreto el de defensa-, así como a la situación de los centros de detención. Pusimos de relieve en aquel caso que la residencia en el país en el que operaba la organización criminal evidenciaba la existencia de vínculos del reclamado con Estado requirente; señalamos que el Estado requirente gozaba de un Poder Judicial independiente y que no había razón alguna, salvo la genérica protección al ciudadano que debe dispensarle su propio Estado, que aconsejara no entregar al recurrente.

En dicha resolución, respecto de la alegada desproporcionalidad de la pena, indicamos que la diferente respuesta punitiva prevista en la ley no es argumento que obstaculice la entrega y que en materia



**ADMINISTRACION
DE JUSTICIA**

extradicional el principio de proporcionalidad
referido al máximo punitivo opera en relación a la
pena de muerte y a la de reclusión perpetua. Incluso
en este caso se autoriza la extradición siempre que el
Estado de emisión garantice que se impondrá una pena
que no signifique necesaria e indefectiblemente
privación de libertad de por vida; concluyendo que la
pena prevista en abstracto no permite considerar que
atenta contra el principio de proporcionalidad.

En el Auto de Pleno de 29 de febrero de 2016,
también se confirmó la entrega de un nacional español,
teniendo en consideración que las pruebas se
encontraban a disposición de las autoridades
requirentes, el hecho de que el enjuiciamiento no
afectaba sólo al reclamado, sino que el mismo formaba
parte de una organización criminal, lo cual implicaba
que, desde el punto de vista estrictamente procesal,
se dividiría la continencia de la causa, al ostentar
las autoridades judiciales españolas única y
exclusivamente, en todo caso, competencia sobre el
reclamado, no sobre el resto de integrantes, lo que
imposibilitaría, desde el punto de vista procesal,
conocer el alcance de la participación del reclamado;
considerando la previsible imposibilidad de contar
con los medios de prueba suficientes para llevar a
cabo el enjuiciamiento de acuerdo a las normas
procesales españolas.

En el más reciente Auto de Pleno de 4 de junio de
2019 se razona también la improcedencia de hacer uso
de la facultad de denegación de la extradición con
base en la nacionalidad española, atendiendo a que el
reclamado por Perú lo era como integrante de una
organización criminal dedicada al narcotráfico, en
cuyo país fue planificada la conducta y desplegada la
actividad criminal; habiéndose llevado a cabo en el
mismo la investigación, de no poca complejidad;
radicando en el Estado reclamante los medios
probatorios y demás elementos de enjuiciamiento, cuya
dificultad sería patente en España.

Igualmente en Auto de Pleno de 18 de Diciembre
de 2012 confirmamos la decisión de entrega de un
nacional español, en un supuesto en el que se invocaba
la existencia de una red organizada de importación y
distribución de droga radicada en el territorio
español, concluyendo que correspondía las autoridades
reclamantes, que llevaron la investigación de los
hechos, en relación con ciudadanos de aquella
nacionalidad, y respecto específicas actuaciones



**ADMINISTRACION
DE JUSTICIA**

delictivas acaecidas en dicho país, su persecución penal, sin perjuicio de que en España se pudieran estar llevando a cabo otras investigaciones que tuvieran algún punto de conexión con la anterior, pero que, en principio, correspondería a cada una de las jurisdicciones el enjuiciamiento separado y concurrente de las causas penales iniciadas en cada uno de sus territorios, sin que ninguna de las jurisdicciones apareciera en dicho caso como especialmente prevalente respecto de la otra. En dicha resolución pusimos de relieve que el material probatorio se encontraba en Argentina e incluso que su entrega permitiría que, además de responder penalmente el reclamado por los hechos y delitos que le competan, su testimonio como coimputado podría ser especialmente relevante para el éxito final procedimiento penal contra los otros responsables.

En el auto de Pleno de 27 de junio de 2016, si bien finalmente se denegó la entrega de un ciudadano español, en un supuesto de organización criminal que cometió delitos de estafa en Estados Unidos, en cuyo país fueron enjuiciados otros integrantes de la trama, se puso de manifiesto que en tales circunstancias la nacionalidad española, la realización de actos de blanqueo en España y la existencia de un procedimiento en nuestro país por falsificación de documentos precisos para la perpetración de la estafa, no bastarían para la denegación de la entrega. En dicha resolución, tras razonar que la nacionalidad y circunstancias personales del recurrente, español de nacimiento y que había mantenido durante toda su vida su vinculación con España, no hubieran obstado a la entrega acordada en la resolución entonces recurrida, se había producido una circunstancia sobrevenida con posterioridad a ser dictado el auto impugnado, por haber sido denegada la extradición respecto del hermano del extradendus, reclamado por los mismos hechos en otro expediente, el cual sería el principal artífice de la defraudación, denegación que se produjo por el gravísimo estado de salud de dicha persona, cuyo deterioro cognitivo y dependencia de la ayuda de terceros, constatados por el médico forense, hacía cuestionable que, en el caso de haberse accedido a la extradición, hubiera podido materializarse la entrega, lo que hubiera producido la impunidad respecto del mismo.

En el referido auto del Pleno se tuvo en consideración la decisión adoptada en el auto de 25 de junio de 2016 por la Sección Segunda de esta Sala



**ADMINISTRACION
DE JUSTICIA**

respecto del hermano cuyo estado de salud impedía la entrega.

En ambas resoluciones se estudió la posible competencia concurrente de la Jurisdicción española, atendido el alcance transnacional de la variada actividad delictiva, la cual, aunque se diseñó en los EEUU de América, pero proyectó ramificaciones fuera de dicho país y se desplegó en España. Pusimos de relieve la procedencia de aplicar, de un lado, el principio de accesoriedad, en orden a valorar la relevancia penal conjunta de cuantos hechos son objeto de reclamación extradicional, y, de otro, de acudir a criterios de conexidad del art. 17 de nuestra LECrim (en particular los nº 3º, 4º o 5º de su apdo. 2, según redacción dada por ley 41/2015, de 5 de octubre de 2015). De modo que, aunque solo una parte de alguno de los hechos se perpetrara en nuestro país, cabría considerar que la jurisdicción española sería también competente, como la americana, para el enjuiciamiento de todo el complejo delictivo, igualmente en aplicación del principio de territorialidad.

En base a ello, en ambas resoluciones señalamos que, para decantarse en favor una u otra Jurisdicción, habrían de ponderarse otros factores o circunstancias, especialmente el hecho de que la actividad delictiva se inició en EEUU, que el peso de la investigación se llevó a cabo en ese país, lo que en principio, aconsejaría que en él se realizase enjuiciamiento; razonando, sin embargo, que existían elementos de prueba en España y en concreto toda la documentación bancaria, para llevar a cabo el rastreo de los capitales procedentes de la defraudación, los cuales en su integridad se derivaron a nuestro país; teniendo en cuenta, además, que las presumibles perjudicadas eran dos únicas entidades americanas, por lo que no podía considerarse de excesiva complicación la toma de declaración, si se interesa algún tipo de testimonio, de que quienes representaren a las mismas, o pudieran dejar constancia del eventual fraude de que hubieran sido objeto; existiendo la posibilidad de que prestaran testimonio por videoconferencia, sin necesidad de desplazarse de su país. Se indicó, además, que las pericias relativas a las falsificaciones practicadas en Estados Unidos podrían incorporarse a la causa española.

También pusimos de manifiesto que otros dos integrantes de la organización ya habían sido condenados en Estados Unidos y que únicamente quedaban



**ADMINISTRACION
DE JUSTICIA**

por enjuiciar los dos hermanos españoles, uno de los cuales no podía ser extraditado por razones muy graves de salud.

En base a todo ello, concluimos que "el enjuiciamiento de los hechos podría seguirse ante los tribunales españoles, con un nivel de éxito similar al que pudiera tener ante los tribunales americanos".

Se puso de relieve en las referidas resoluciones que había de tratar de evitarse situaciones de impunidad, que podrían darse respecto de uno de los reclamados cuya entrega previsiblemente no podría efectuarse por razones de su extremadamente precaria salud, respecto de la cual, por el carácter progresivo de su enfermedad, era previsible un empeoramiento hasta el momento en que pudiera efectuarse la entrega.

La situación abordada en la resolución mencionada, difiere notoriamente de la que ahora nos ocupa, en la que no existen motivos de salud del reclamado, el cual recientemente ha adquirido la nacionalidad española y que no consta tenga arraigo efectivo antiguo en nuestro país, en la que se persigue una compleja organización criminal cuyos miembros han sido juzgados o están pendientes de enjuiciamiento en Estados Unidos, en cuyo país se ideó y desplegó la trama de corrupción, radican las pruebas y en el que el procedimiento se encuentra muy avanzado, al haberse formulado el Acusación por el Gran Jurado.

En base a todo ello, estimamos que el recurso del Ministerio Fiscal debió de ser estimado, accediendo a la extradición, en su caso, condicionada a la devolución a España para su enjuiciamiento, en el supuesto de que finalmente se acuse al extradendus por hechos no abarcados por el principio de non bis in ídem respecto de los sentenciados en EEUU o, al menos, plantear la entrega temporal para su enjuiciamiento en el Estado reclamante.

En dicho sentido discrepamos respetuosamente del parecer de la mayoría expuesto en el auto ut supra mencionado.

En Madrid a 13 de febrero de 2020.